In the Matter of the Application for an · Attachment against ALONZO BRADNER et al.

The railroad commissioners appointed under the act authorizing certain towns of Livingston county to issue bonds and take stock in the E. & G. V. R. R. Co. (Chap. 442, Laws of 1868), had no relation to the county and in no sense were they subject to supervision by or subordinate to its board of supervisors.

Accordingly *held,* that said board had no jurisdiction to appoint a committee of its members for the purpose of an investigation to ascertain who were the railroad commissioners, under said act, of a town in said county; and had no authority to require the attendance of a witness before the committee upon such investigation (§ 1, chap. 190, Laws of 1858) ; and that, therefore, a subpœna requiring such attendance conveyed no mandate which imposed compliance, and disobedience thereto was not, within the meaning of the law, contempt.

The said board of supervisors having appointed a committee to make such an investigation, a subpœna, signed by F. as " chairman of the committee," was issued, requiring the defendants to appear before said committee at a time and place named, and to bring their commissions or " letters of appointment," and such other documents in their control as might " be required in the investigation of the said subject " The subpœna was not obeyed ; and upon a petition signed and verified by F., an attachment was issued by a justice of the Supreme Court, directing the sheriff of said county to arrest the defendants. Upon a hearing on return to the writ, the judge ordered the writ to be " vacated and quashed," which order was entered and served on the attorney who conducted the proceedings, and subsequently, upon his application, said order was vacated and a new one granted, which directed that the attachment be vacated upon condition that no action for false imprisonment on account of the imprisonment should be brought. On appeal, the General Term reversed that part of the order imposing the condition. *Held* no error ; that as no case of contempt was made out, the attachment was absolutely void, and furnished no justification to the party causing it to be executed, who thereupon became liable to the defendants for false imprisonment ; that this right of action could not be interfered with by the court, and there was, therefore, no authority for imposing such condition.

The difference in this respect between a void warrant and one simply irregular pointed out and the authorities illustrating it collated.

Also *held,* that the judge had no authority to rescind or recall his first order and change the terms on which it stood ; that when the case is one where a condition is proper, it must be imposed, if at all, when the process is vacated.

Also *held,* that it was within the discretion of the General Term to direct the costs of the appeal to be paid by the petitioner.

(Argued November 22, 1881 ; decided December 13, 1881.)

APPEAL from order of the General · Term of the Supreme Court, in the fourth judicial department, made October 29, 1880, which affirmed in part, and reversed in part, an order made by a justice of that court.

On the 23d of December, 1879, a subpœna signed "Lester B. Faulkner, chairman of the committee," was served upon the respondents. By it they were commanded to appear before a committee of the board of supervisors of Livingston county, at a time and place named, to give such information as might be in their possession as to "who" then were "railroad commissioners of the town of North Dansville, if any, by virtue of chapter 442 of the Laws of 1868," and they were further commanded to bring before said committee their commissions, if any, "or letters of appointment," and such other documents in their control as might "be required in the investigation of the said subject." The citation was not obeyed, and on the 29th of 'December, 1879, a petition signed "Lester B. Faulkner," and verified by him, was presented to one of the justices of the Supreme Court, who thereupon issued an attachment in due form, addressed to the sheriff of Livingston county, directing him to arrest the respondents, and bring them forthwith before him, at his Chambers in the city of Rochester. The sheriff executed the writ, and they having been heard, the judge on the 2d of February, 1880, decided that the supervisors had no jurisdiction over the matters in question, and made and signed an order, which, after reciting the proceedings, ended in these words : "Ordered, that the said attachment be, and the same is hereby vacated and quashed." It was delivered to the attorney for the respondents, and by him caused to be entered in the office of the clerk of Livingston county, and a copy served on the 14th day of February, upon the attorney who conducted the attachment proceedings. On the 4th of March, upon the application of the latter, the judge made an order requiring the respondents to show cause why the order, entered February 14th, should not be vacated, and set aside and resettled, and modified, so that it should contain a provision, "that the quashing of the attachment shall be conditional upon

the respondents executing and filing a stipulation not to sue for false imprisonment." Notwithstanding the opposition of the respondents, the order before granted was vacated and a new one made, by which it was declared that "the attachment granted and issued herein be, and the same is hereby vacated, and quashed upon condition that no action for false imprisonment on account of the arrest upon the attachment, shall be brought by the respondents, or either of them, against any of the parties or their counsel upon whose application the attachment herein was granted." From so much of this order as vacated the former order, and imposed a condition on vacating the attachment, the respondents therein appealed to the General Term, and the committee of the board of supervisors also appealed from so much of the order as vacated the attachment. The General Term reversed that part of the order which imposed the condition, and affirmed the residue with costs and disbursements "to be paid by Lester B. Faulkner, the petitioner." Appeals were taken to this court by the committee from so much of the order as affirms the order vacating or quashing the attachment, and also from that part which strikes out the condition on which the attachment was vacated, and by the petitioner from that part which imposes costs on him.

*Charles J. Bissell* for appellants. That part of the order of General Term which imposes the costs upon the petitioner personally is appealable to this court. It affects a substantial right and is final. (*Giles* v. *Halbert*, 12 N. Y. 33 ; *Slocum* v. *Barry*, 38 id. 46 ; *Ludlow* v. *Knox*, 7 Abb. Pr. [N. S.] 411 ; *Erie R'way Co.* v. *Ramsay*, 45 N. Y. 637.) The board of supervisors had power to inquire into the matter contemplated by the resolution. (*Briggs* v. *Mackellar*, 2 Abb. Pr. 30.) The judge had power to vacate, resettle and modify the prior order. (*Moore* v. *Merritt*, 9 Wend. 482 ; *Bigelow* v. *Heaton*, 2 How. Pr. 207 ; *Selden* v. *Christophers*, 1 Abb. Pr. 272 ; *Star F. Ins. Co.* v. *Godet*, 2 J. & S. 359 ; *Rob* v. *Moffatt*, 3 Johns. 257 ; *Chandler* v. *Bricknell*, 4 Cow. 49 ; *Cash* v. *Wells*,

1 B. & Ad. 375 ; *Rogers* v. *Chapman*, 7 Cow. 475 ; *Brown* v. *Treat*, 1 Hill, 225 ; *McGovern* v. *Payne*, 32 Barb. 83 ; *Smith* v. *Corbiere*, 3 Bosw. 634 ; *Egerton* v. *Ford*, 11 Abb. Pr. 415.) The original order having been made under a misapprehension, the proper and only remedy was to move to resettle it. (*Herbert* v. *Smith*, 6 Lans. 495.) It was in the discretion of the judge making the order, and he had the power to impose, as a condition of vacating the attachment, that no action for false imprisonment should be brought. (*Miller* v. *Parnell*, 6 Taunt. 370 ; *Lorimer* v. *Leele*, 1 Chitty, 134, note a.)

*John A. Vanderlip* for respondents. The board of supervisors had no jurisdiction of the subject upon which they assumed to act. (*People, ex rel. Merritt*, v. *Lawrence*, 6 Hill, 244, 245 ; *Joslyn* v. *Dow*, 19 Hun, 496 ; 1 R. S. [6th ed.] 861 –891 ; *The Chemung Canal B'k* v. *Judson*, 8 N. Y. 254, 259 ; *Eliott* v. *Piersol*, 1 Peters, 328, 340 ; *Doleson* v. *Pearce*, 12 N. Y. 156, 164 ; *Harrington* v. *People*, 6 Barb. 607, 609–10 ; *People* v. *Sturtevant*, 9 N. Y. 266 ; 1 E. D. Smith, 190 ; 46 Barb. 325.) The respondents in the attachment proceedings were unlawfully arrested, and were entitled to their discharge as matter of right. (*Cash* v. *Wells*, 1 B. & Ad. 375 ; *Chandler* v. *Bricknell*, 4 Cow. 49 ; *Rogers* v. *Chapman*, 7 id. 475.) The order quashing the attachment was in the discretion of the court, and not appealable. (*Brady* v. *Brundage*, 59 N. Y. 310 ; *Anonymous*, id. 313 ; *Wallace* v. *Castle*, 68 id. 370 ; *Claflin* v. *Baere*, 80 id. 642 ; *Douglass* v. *Haberstro*, 82 id. 572 ; 23 Alb. L. J. 74 ; *Clark* v. *Lourie*, 82 N. Y. 580.)

Danforth, J. We think neither appeal can succeed. The case is limited by the facts disclosed in the petition. It there appears that the supervisors of Livingston county appointed a committee for the purpose indicated in the subpœna. The act referred to (Laws of 1868, chap. 442) contains a scheme for bonding the town of North Dansville (among others) for certain railroad purposes, through the intervention of persons called " railroad commissioners." The manner of their appointment

(§§ 1, 12), and their powers and duties are there prescribed (§§ 2, 3). They have no relation to the county, nor are they, in any sense, subject to supervision by, or subordinate in any way to, the board of supervisors. On the contrary, they are independent officers (§§ 9, 10, 11), to perform certain statutory duties, in the accomplishment of which the action of that board is indeed made necessary (§§ 4, 7), but such action is ministerial and not by choice. They are required to raise by taxation a sum of money, designated in the report of the commissioners as necessary, for the payment of bonds issued by them, or interest thereon (§ 4, Laws of 1868, *supra*). When collected it is to be paid to the commissioners. With the correctness of the report, or the manner or actual disposition of the money paid over, they have and can have no concern. More than this, the petition shows that they have in fact had no trouble over it; they received and acted upon the report of the commissioners, and ordered levied, and collected, the sum named in it. It also shows that the difficulty of determination is with the petitioner, not as a member of the board of supervisors, but as the supervisor of the town, for he therein declares, that it is his duty, " as supervisor of said town, to pay over said moneys, when collected and received by him, to the railroad commissioners; " that he has no knowledge as to who are such officers, "and no information, except that it is reported that" the respondents herein and one Hyland " claim that they have been appointed such railroad commissioners." Now it is evident, with this question the supervisors have nothing to do; it is, therefore, a matter not within their jurisdiction, and it follows that they had no authority to require the attendance of any witness to enable them to answer it, for however necessary or important they might deem his examination, it could only be enforced "·upon some subject or matter within the jurisdiction of such board " (Laws of 1858, chap. 190, § 1). The subpoena, therefore, directed to the respondents conveyed no mandate which imposed compliance, and disobedience thereto was not within the meaning of the law contempt. Hence the attachment by which they were called upon to answer for it, issued without cause, and was,

therefore, justly vacated. Nor as to this was there any difference of opinion in the Supreme Court. The same result was reached by the learned judge, who felt constrained to annul the warrant he had himself granted, and the General Term, which approved his order. In view of these concurring opinions we need say nothing further upon this point.

We are next to consider whether the judge in vacating the attachment could lawfully impose as a condition, "that no action for false imprisonment, on account of the arrest under it, should be brought" by the respondents. It should be borne in mind that the petition had no tendency to make out a case of contempt; therefore the attachment was not only voidable but absolutely void. The moment the petitioner caused it to be executed he was a trespasser, and became liable to an action for false imprisonment. (*Miller* v. *Adams*, 52 N. Y. 409.) In *Day* v. *Buck*, decided November, 1881, by this court (opinion by Andrews, J.[*]), after a careful examination of authorities it was held to be well settled that a void writ or process furnished no justification to a party, and he became liable to an action for what had been done under it at any time, and that it was not necessary it should be set aside before bringing the action. With merely erroneous process it is different, and upon the distinction thus indicated many of the cases cited by the appellant turn. In *Miller* v. *Parnell* (6 Taunt. 370), the *ca. sa.* was prematurely issued. In *Lorimer* v. *Lule* (1 Chitty, 134), judgment was signed after appearance by defendants; so in the earlier case of *Wilson* v. *Kingston*, referred to in the note to the preceding one. In *Rob* v. *Moffat* (3 Johns. 257), judgment was entered on a false return, and after execution, both were set aside, and the debtor left to sue the sheriff on account of his return. In *Chandler* v. *Brecknell* (4 Cow. 49), the *capias* was tested out of term. In none of these was there an absence of jurisdictional facts, but as the court say in *Lorimer* v. *Lule* (*supra*) "a slip in practical accuracy." In *Bartlett* v. *Stinton* (L. R., 1 C. P. 483), it is plain the court would have rescinded such a condi-

---

[*] *Ante*, p. 56.

tion if the defendant had not, in obtaining a vacatur of the writ, had costs given him on the terms of bringing no action. "Having," they say, "submitted himself to the discretion of the judge, he cannot complain of the manner in which that discretion was exercised." Other cases come nearer to the one before us. In *Cash* v. *Wells* (1 B. & Ad. 375; 20 Eng. Com. Law Rep. 402), on motion by defendant a judgment and subsequent proceedings were set aside because execution was issued after payment of the debt; and in answer to plaintiff's request that a condition should be imposed on defendant to bring no action, the court said: "We cannot, without the defendant's consent. He applies to us *ex debito justitæ* to have proceedings set aside which are against good faith." So in *Adlam* v. *Noble* (9 Dowling's Pr. 322), it was held that where the right existed to have the writ vacated, the court had no power to restrain the party from bringing his action. In *Abbott* v. *Greenwood* (7 Dowling's Pr. 534), after a writ was vacated, a motion was made for a stay of action for false imprisonment. The judge asked "what the court" could do, "what alternative could it impose," and could suggest nothing "but to rescind the rule for setting aside the execution," and adds, "this I cannot do, for the court was bound to grant that rule, it being matter of right." It is needless to multiply authorities. The reason for the rule which forbids the imposition of a condition and the distinction between these two classes of decisions is, that merely erroneous process stands valid and good until it is reversed, while void process is an absolute nullity from the beginning.

In the former case, therefore, the courts sometimes impose a condition on the defendant, and may do so because the right to sue only accrues to him upon the exercise of authority by the court; while, as we have seen, for an act done under void process the party injured may sue at once and notwithstanding the writ. (*Day* v. *Buck* [*supra*]; *Parsons* v. *Loyd*, 3 Wils. 341.) This was the respondent's right. The moment the attachment issued and was enforced by the petitioner or other party, the one procuring—or at whose instance it was executed, became liable

to an action. This liability on his part was a right on the part of the respondents — a right of action; property, therefore, which having vested could be taken from them against their own consent only by due process of law. The judge in restoring the respondents to liberty could not deprive them of their property. One right was as sacred as the other. If he had no power to inquire whether they were liable to be fined, how could he, without inquiry, demand a surrender of part of their estate? The respondents were taken before him in order that such proceedings might be had as were prescribed by law. This was the command of the writ. What did the law prescribe? It was obvious that no offense had been committed; indeed, that none could have been committed. None was charged. The only thing to be done was to repeat what the law had already said, "The writ is annulled." To impose a condition of any kind was to punish. To vacate on condition was equivalent to the issue of a new writ. This would be useless, for the judge had no power to issue the first. He had, therefore, no power to impose a condition upon vacating it, but should have left the aggrieved party to bring an action if he saw fit. Any other conclusion would put the right of personal liberty on a very insecure foundation — the arbitrary will and discretion of a judge. Some of the cases to which we are referred by the appellant may go that length; but none of them are of controlling authority, and if they sanction such a doctrine it cannot be followed; for it is contrary to the first principles of constitutional law.

We are of opinion also that the judge had no power to rescind or recall his first order, or after it was made change the terms on which it stood. Its effect was to quash the writ. It then became *functus officii*, and could not be revived. When the second order (that entered April 5) was made, there was no writ of attachment in force. When the case is one where a condition is proper it must be imposed, if at all, when the writ or process is vacated. (*Abbott* v. *Greenwood* [*supra*]; *People, ex rel. Roberts*, v. *Bowe*, 81 N. Y. 43.) But without this and upon the considerations be-

fore stated, that part of the order imposing conditions was prop-
erly reversed by the General Term.    It was within the discre-
tion of the court to direct the costs of the appeal to be paid by
the petitioner.    It is true that he does not appear to have any
personal interest in the prosecution of the writ, but its incep-
tion was due to him and he was in close privity, not only with
it, but also the subpœna.    It is contended by the appellant that
the General Term erred in its construction of the record, al-
leging that it shows no " petition" or "petitioner."    It is of
little moment by what name an applicant for a writ is desig-
nated, or the statement of his case characterized, but we find
in the return sent up from the Supreme Court a copy of the
subpœna followed by an averment that " a subpœna in the same
form directed to Alonzo Bradner, with due proof of its service
upon him, was attached to the following petition."    Then im-
mediately follows a statement addressed to a justice of the Su-
preme Court, in which the appellant Faulkner is named as the
affiant, and it is subscribed and verified by him.    It is indorsed
by the  justice as " read on application for an attachment," and
in the orders made by him is referred to as a "petition."    No
other paper was presented.    It may be that the petitioner was
the instrument of others, as he appears to have been chairman
of the committee, but he cannot be said to have taken no part
in the proceeding, and he was, therefore, liable for costs of the
appeal if the court thought proper to impose them.

The order appealed from should be affirmed, with costs.

All concur.

Order affirmed.