PEOPLE *ex rel.* WEBSTER *v.* VAN TASSEL, Sheriff.

(*Ulster County Court.* February, 1892.)

CONTEMPT—POWER OF CITY COUNCIL.

Kingston City Charter, § 32, gives a committee of the common council power to issue a summons to any person to appear and testify in any matter pending before it, and provides a penalty of imprisonment for refusal to obey the summons or to "answer any proper or pertinent question," but does not contain any express provision authorizing the committee to compel the production of books and papers. *Held*, that such committee has no power to imprison a witness for contempt for refusing to produce books and papers.

Application by Grove Webster for a writ of *habeas corpus* to review the commitment of the relator to the custody of William T. Van Tassel, sheriff of the county of Ulster, under a warrant issued by the recorder of the city of Kingston charging relator with a refusal to obey a summons issued by a committee of the common council of said city. Writ granted.

*D. M. De Witt*, for relator. *G. D. B. Hasbrouck*, Corp. Counsel, for sheriff.

CLEARWATER, J. By resolution of the common council of the city of Kingston adopted January 15, 1892, it was "resolved, that two members of the common council be added to the committee to investigate the city treasurer's accounts in the place of Aldermen Murray and Dolson, whose terms of office have expired, and that said committee have full power to send for persons and papers. The chair appointed, in addition to the mayor, Alderman Brinnier and the city clerk, the other members being Aldermen Dederick and Tubby." Claiming to act under the provisions of the city charter, (Laws 1872, c. 150, § 32,) this committee issued a summons to the relator, by which he was summoned "to attend before the committee at the mayor's office in the city-hall on Wednesday, January 27, 1892, at 3 o'clock P. M., there to give such information touching the subject of inquiry as might be in his possession;" and he was further directed to "bring with him before said committee all bank-books had and held by him as city treasurer of the city of Kingston, and containing the record of transactions between such officer and the First National Bank of Rondout, relating to the general fund account, bond and coupon account, and all other accounts, and such other documents in his custody as might be required in the investigation of the said subject." In obedience to the command of the summons, the relator appeared at the time and place therein specified, and was sworn and examined as a witness by the members of the committee, but refused to produce any books or documents. Thereupon Alderman Dederick, a member of the committee, presented an affidavit to the recorder of the city of Kingston, setting forth the refusal of the relator to produce such books, and an order of attachment was issued by the recorder directed to the sheriff, commanding him "to attach the relator, and forthwith bring him before the recorder at his office in the city-hall, to answer for his refusal to obey the said summons, and bring the said books, and attend and appear and testify as thereby required. The relator was arrested by the sheriff, and taken before the recorder; who thereupon adjudged that he had failed and refused to attend and appear as required by the summons, and who forthwith, by an order under his hand, committed the body of the relator to the custody of the sheriff, commanding the sheriff that

he keep him in close custody in the county jail of the county of Ulster for the period of 20 days, or until he "shall attend and appear in obedience to such summons, directing him to bring the books aforesaid before the said committee." It is claimed by the relator that the action of the committee, of Alderman Dederick, and of the recorder is absolutely void, and that his detention is illegal, for three reasons: *First.* That the committee is illegally constituted, in that the city clerk is made a member thereof, without authority of law. *Second.* In that the warrant committing the relator to the custody of the sheriff is fatally defective, in that it provides for his perpetual imprisonment in case of his failure to comply with the order of the committee. *Third.* In that the recorder had no power to commit him to the county jail for refusing to produce the books and papers specified in the summons. There is possibly some question whether the action of the committee is not invalidated by the fact that the city clerk, who is in no sense, under the charter, a member of the common council, was made one of its members. But it is not necessary to discuss that point.

Upon a careful examination of the statute and the authorities, I am rather of the opinion that the warrant of the recorder, committing the relator to the custody of the sheriff, is fatally defective, and that, under the provisions of the *habeas corpus* act, the relator would be entitled to his discharge upon that ground alone. Code Civil Proc. § 2033, subd. 3. However correct these views may be, it was stated on the argument by counsel for the relator, and by the corporation counsel, that what was most desired was the opinion of the court as to the power of the recorder to commit the relator for a refusal to produce books and papers. It was suggested by the court, in order to avoid circumlocution of proceeding, that the relator waive the point as to the claimed illegality of the organization of the committee, and the defective character of the recorder's warrant, and that a stipulation of waiver be entered upon the record, in order that the more important matter involved could be passed upon as the only point of the case. This, however, was not assented to. The proceeding is a special one, under the provisions of section 32 of the charter of the city, which is as follows: "The common council, or any committee thereof, shall have power to issue a summons to any person to appear and testify before them, in respect to any matter pending before or referred to them. Such summons may be served at any place within the county of Ulster, in the same manner as subpoenas for witnesses in criminal cases. Any person who shall refuse to attend, in obedience to any such summons, may be arrested by an order of attachment, which may be issued by the mayor or recorder upon proof of the service of such summons and of such refusal, and be committed to the county jail or other proper place of detention until he shall appear or testify as required. Such witness so refusing to attend may also be fined or imprisoned for disobedience of such summons, by the mayor or recorder, in the manner and to the same extent as witnesses refusing to attend in obedience to a subpoena duly issued by a justice of the peace. Whenever any person summoned as a witness before said common council, or any committee thereof, shall refuse to be sworn or affirmed, or to answer any proper or pertinent question, the mayor or recorder, on complaint made, may forthwith commit such person to the county jail, or other proper place of detention, for a period not exceeding 20 days, or until he shall be sworn or affirmed or answer such questions. Such commitment shall be made by a warrant directed to the sheriff of the county, or other officer having such place of detention in charge, and shall recite the cause of such commitment, and such officer shall keep such person in close confinement, as directed thereby."

It is claimed by the learned corporation counsel that although the city charter does not, in express language, confer upon the common council, or its committee, the right to compel the production of books and papers, still

that that power is one incident to the power to compel the presence of and
the giving of testimony by a witness; and, if this contention be correct, were
it not for the alleged defects above referred to, it would be evident that the
relator was in contempt, and was properly committed to the county jail for
refusal to obey the command of the summons issued by the committee ap-
pointed under the resolution of the common council. If the proceeding were
before a judicial, instead of a legislative, tribunal, there would be no question
as to the correctness of this position, as courts of justice have for centuries
had the inherent right to compel the attendance of witnesses, and the pro-
duction of such books and papers as were pertinent to the determination
of the rights of parties in an action pending before them; and the Revised
Laws, the Revised Statutes, and the provisions of the Code of Civil Proced-
ure have in no sense conferred this power, but have simply defined, limited
it, and provided a method for its enforcement.   There seems, however, from
the earliest times, to have been a wide distinction between the powers thus
possessed by courts of justice and those conferred upon legislative bodies; and
it seems also to be a marked disposition upon the part of courts of justice to
limit the scope of inquiry by legislative bodies, particularly those of a subor-
dinate character, within the strict limit of the law authorizing such investi-
gations.   And the reasons assigned by the courts for the severity of their con-
struction of such statutes is that such investigations were unknown to the
common law; are purely creatures of the legislative body itself; are inform-
ally conducted, without the usual safeguards and restrictions imposed by rules
of evidence and procedure in courts of justice; are apt to be inquisitorial and
oppressive; and are too often used for strictly partisan purposes, becoming a
menace to the rights of the citizen, without affording him that protection
guarantied by the constitution and the laws.   Interesting as the subject is,
it is not possible, within the limited time at the disposal of the court, to re-
view the authorities, ancient and modern, upon this important branch of the
law.   I can only refer to the statutes, and to two or three of the more recent
decisions.

It is admitted by the corporation counsel, and by counsel for the relator,
that the language of the charter, "such summons may be served at any place
within the county of Ulster in the same manner as subpœnas for witnesses in
criminal cases," means simply that such summons may be served without the
payment to the witness summoned of the statutory *per diem* allowance, and
the sum for mileage directed to be paid to witnesses in civil cases.   It is
claimed, however, by counsel for the relator, that, as the city charter does
not, in express terms, provide for the issuing of a summons commanding the
witness to produce books and papers, and does not, in express language, pro-
vide that, if a witness fail to produce books or papers, he may be committed
to the county jail, that that power is not conferred by statute, and that, as
the provisions of the charter providing for the punishment of a recalcitrant
witness is penal in its nature, it must be literally and strictly construed. It will
be seen, by an examination of the statute, that in each case where the power
to punish for contempt for a failure to comply with the provisions of a *sub-
pœna duces tecum*, commanding the production of books and papers, is given,
the statute itself specifically and distinctly directs that a failure to pro-
duce such books and papers is a contempt.   This distinct provision, it is ad-
mitted, is absent from the city charter.   Whether it be a *casus omissus*, or a
deliberate withholding of power by the legislature, is, for the purpose of this
inquiry, immaterial.   Thus, under the provisions of the Code of Civil Pro-
cedure and the Code of Criminal Procedure, express provision is made by stat-
ute for the production of books and papers, and for the punishment of a wit-
ness who fails to produce a book or paper when properly required so to do,
The penalty for disobedience in civil cases is prescribed by section 853 of the
Code of Civil Procedure, which is as follows: "A person so subpœnaed, who

fails, without reasonable excuse, to obey the subpœna, or a person who fails, without reasonable excuse, to obey an order duly served upon him, made by the court or a judge, in an action before or after final judgment therein, requiring him to attend and be examined, or so to attend and bring with him a book or a paper, is liable, in addition to punishment for contempt, for the damages sustained by the party aggrieved in consequence of the failure, and $50 in addition thereto." The provisions of the Code of Criminal Procedure are embodied in section 613, and are to the effect that, if books, papers, or documents be required, a direction to the following effect must be contained in the subpœna, etc. In a leading case before the general term of this department, Presiding Justice LEARNED, writing the opinion, says: "The power which courts possess of punishment for contempts and for refusal to give evidence is, in its nature, an exception to the provision of the constitution. It is a power to deprive a man of his liberty without a jury and without a regular trial. It cannot, therefore, be extended in the least degree beyond the limits which have been imposed by statute. No implication and no fancied necessity can be permitted to add to the literal meaning of the words by which the legislature have restricted this power; and this is especially true of all tribunals which are not courts of general jurisdiction." *Rutherford* v. *Holmes*, 5 Hun, 317. This case, in which it was held that a justice of the peace had no power to adjudge a person in contempt and to punish him therefor, save in the exact cases prescribed by statute, and that a justice was liable in an action for false imprisonment at the suit of one imprisoned under and in pursuance of his warrant of commitment for such a contempt, was affirmed by the court of appeals in 66 N. Y. 368, in which Judge FOLGER, delivering the opinion, says "that it is significant that the legislature, so far as it has in general terms enacted for proceedings as for contempts to enforce civil remedies, and to protect the rights of parties in civil actions, has confined its action to courts of record, and that no court, not of general jurisdiction, has any inherent or implied power to punish for contempt, save in a case stated in the statute law." In the case of *People* v. *Riley*, 25 Hun, 587, Judge GILBERT says: "There exists no undefined power authorizing the commitment of citizens for contempt in cases defined and limited by statute." This case, in which the relator was committed to the county jail of the county of Kings for refusal to pay a sum of money ordered to be paid by the city court of the city of Brooklyn, and released on *habeas corpus* by a justice of the supreme court in the second district, was followed by the court of appeals in *Myers* v. *Becker*, 95 N. Y. 493, and in *Sherwin* v. *People*, 100 N. Y. 358, 3 N. E. Rep. 465, and in numerous cases at the general term since that time.

In *Re Bradner*, 87 N. Y. 171, it was unanimously held by the court of appeals that the board of supervisors of the county of Livingston had no jurisdiction to appoint a committee of its members for the purpose of an investigation relative to the railroad commissioners of one of the towns in that county, and that they had no authority to require the attendance of a witness before the committee upon such an investigation, and that, therefore, a subpœna requiring such attendance conveyed no mandate which imposed compliance, and disobedience thereto was not, within the meaning of the law, a contempt. In that case the board of supervisors appointed a committee to make an investigation, and a subpœna signed by the chairman of the committee was issued requiring the defendants to appear before the committee at a time and place named, and to bring certain documents in their control as might be required in the investigation of the subject. The subpœna was not obeyed, and the recalcitrant witness was committed to the custody of the sheriff of the county. He sued out a writ of *habeas corpus*, and on the return of the writ the judge ordered it to be vacated and quashed, and imposed as a condition that no action for false imprisonment on account of the imprisonment of the relator should be brought. On appeal, the general term reversed

that part of the order imposing the condition, and, on appeal to the court of appeals, that court unanimously held that the board of supervisors had no authority to compel the production of the books and papers; that no case of contempt was made out; that the warrant committing the relator to the custody of the sheriff was absolutely void, and furnished no justification to the party causing it to be executed, and thereupon became liable to the defendants for false imprisonment; that that right of action which had accrued to the relator could not be interfered with by the court, and that it therefore had no authority for imposing such a condition. In the case of *People* v. *Webb*, (Sup.) 5 N. Y. Supp. 855, a committee of five members of the assembly, including the speaker, were given charge of certain repairs and alterations in the capitol, the same to be completed by December 15, 1888. Subsequently, and after the organization of the legislature of 1889, a committee of members was appointed to investigate all the questions connected with the work, with power to send for all persons and papers, and report to the house with such recommendations as, in its judgment, the public interest might require, and for the purpose of remedial legislation. The committee issued its subpœna, directed to the relator, the superintendent of the Western Union Telegraph Company of Albany, commanding that he bring with him certain telegrams addressed to one Snaith, to whom the contract had been awarded. Upon the relator's refusal to produce the telegram, or to give information thereof, he was arrested on the warrant of the speaker, and subsequently committed to the common jail. He sued out a writ of *habeas corpus*, which came up before Mr. Justice MAYHAM, who, in a learned and exhaustive opinion, says: "It is well settled that the legislature cannot, nor can any committee appointed by it, constitute itself into a court of general jurisdiction, or a grand inquest, for the purpose of inquiring into the conduct of a citizen not a member of its body. Nor can it compel the answer of the witness on an inquiry or an investigation before it, except for legislative purposes, or requiring information upon which to predicate remedial legislation. Assuming, therefore, as we must, under the authorities, that the legislature has no general judicial powers, and that it can confer none upon its committees, and that its power to punish contumacious witnesses is confined strictly to examination for legislative purposes, we are forced to the consideration of the question, was the investigation in which the special committee of the house was engaged when the relator refused to answer and produce papers for legislative purposes or to promote beneficial legislation, or was it inquisitorial, in the nature of a judicial investigation? * * * As we have seen, a legislative committee may summon and examine witnesses in legislative proceedings, or to promote remedial legislation; but, when they seek to enforce obedience to their orders by proceedings for contempt, they must be acting strictly within the limits of their delegated authority. Both committee and witness are subject to the provisions of the statute. In this case the recitals and preambles purporting to give reasons for the adoption of the resolution of investigation do not suggest any new legislation. The chief object seems to be the gratification of a very natural, and perhaps a very laudable, curiosity on the part of the press and public to know what has been done with the $100,000 profit on the contract. * * * The rule is elementary that the mere assertion of jurisdiction does not confer it upon a tribunal of special and limited authority. * * * I am of the opinion that the assembly had no jurisdiction to compel the relator to answer the question, and furnish the telegrams demanded, and that his committal for contempt, on refusing to comply with the requirements of the committee, was without jurisdiction and void, and that he must be therefore discharged."

It will hardly be contended that the legislature of the state and the board of supervisors of a county are bodies inferior in dignity to the common council of the city of Kingston, and if the courts have uniformly viewed with such

strictness the powers of these superior legislative bodies, and denied to them, in cases of this character, the existence of any implied or inherent powers other than those expressly given by statute, it is difficult to see how it is possible to apply a different rule in construing the provisions of the charter of the city, which, it is conceded, contains no express statutory provision authorizing the commitment of a person who declines to produce books and papers. It would seem, therefore, entirely aside from the questions raised as to the illegality of the constitution of the committee, and the defect in the warrant of commitment, that the committee of the common council had exceeded its jurisdiction in undertaking to compel the relator to produce the books and papers specified in the summons, and that its action in causing a complaint to be made before the recorder of the city of Kingston, and the action of the recorder in committing the relator to the common jail of the county for disobedience of the summons, was without jurisdiction, and absolutely void; that the imprisonment of the relator is illegal, his detention by the sheriff unlawful, and that he is entitled to his discharge. If the books mentioned in the summons be in fact the property of the city, and not the individual property of the relator, the city is, of course, entitled to their possession, which can be readily obtained by the ordinary process of the courts, and it ought to be entirely unnecessary to call attention to those provisions of law which provide for the obtaining possession of property unlawfully withheld by another.