JOSEPH H. BERRY *et al.*, Respondents, *v.* ANDREW BROWN, Appellant.

*Court of Appeals, November* 29, 1887.

Reversing same case, 37 Hun, 639, Mem.

1. *Contract. Consideration.*—An agreement by a husband to pay the firm debts on a purchase by his wife of her partner's interest, is made for the benefit of the vendor to relieve him from, and to indemnify him against the firm debts without any intention to secure any benefit to the firm creditors ; and as the sale is not made to the husband, and no consideration whatever passed to him, the creditors, who are strangers to the agreement, cannot enforce it against him,

2. *Same. Statute of frauds.*—A promise by the husband to pay all the firm debts upon his wife's purchasing her partner's interest therein, unless in writing, is invalid under the statute of frauds, for the reason that he acquires no interest in, nor receives any benefit from, the property conveyed.

Appeal from a judgment of the general term of the supreme court affirming a judgment entered upon a verdict, and also from an order affirming a special term order, denying motion for a new trial upon a case and exceptions.

*Joseph H. Choate* and *James F. Gluck,* for appellant.

*Spencer Clinton,* for respondents.

EARL, J.—This action was brought by the plaintiff, who held claims against the firm of Zeiss & Company, which firm was composed of Zeiss and Maria A. Brown, the wife of the defendant, to recover upon such claims against the defendant on the ground that he had assumed the payment of them. It was alleged in the complaint that on or about the 8th day of January, 1881, Zeiss sold all his interest in the firm property to the defendant, and that as part of the considera-

tion of the sale, the defendant agreed to pay all the firm debts, including the claims of the plaintiff. The defendant put in issue all the material allegations of the complaint.

Upon the trial it appeared that Zeiss and Mrs. Brown entered into copartnership for the purpose of manufacturing and selling varnish at Windsor, in Canada, for the term of three years, commencing July 1, 1878, and ending July 1, 1881 ; that Mrs. Brown contributed her own capital to the firm ; that the defendant had no interest therein ; but that he held a power of attorney under seal to act for his wife. The firm business was conducted until January, 1881, when the defendant opened negotiations with Zeiss for the sale by him of his interest in the firm and his retirement therefrom. The negotiations terminated in the execution of a written agreement, dated January 11, 1881, by which Zeiss sold out all his interest in the firm business and assets to Mrs. Brown, she agreeing as the consideration of the sale to pay him the sum of $300, to allow him to retain $700, which he had wrongfully taken of the funds of the firm, and to assume and pay all the debts of the firm. The agreement was under seal between Mrs. Brown of the first part and Zeiss of the second part, and it was first signed by " Maria A. Brown, per Andrew Brown, attorney in fact," and then by " W. Zeiss," and it was acknowledged by the defendant as attorney for his wife and by Zeiss before a notary public. It is not alleged that there was any fraud in the draft or execution of this agreement. It was read over to Zeiss and he testified that he understood it. He made objections to some of the language used in it and looked it over himself. The defendant and the attorney who drew the agreement testified that it expressed truly the whole agreement between the parties. Yet Zeiss was permitted to testify that he did not understand it as written, and that he understood he was making the sale to Kruger & Co., although that name did not appear in the writing and was not mentioned at the time the writing was signed. But he

did not testify that he made the sale to the defendant or that he understood that he made it to him. He testified, however, that Kruger & Co., to whom he supposed he was making the sale, were to assume and pay the firm debts. It is clear from his evidence that he understood and that it was agreed that the purchaser, whoever, he was, was to assume and pay the firm debts. But he also testified that the defendant said during the negotiations and before the execution of the written agreement, that he, Zeiss, " should be relieved from all indebtedness of the firm ;" that he, the defendant, " would see that the creditors are paid ;" that it was the agreement that he " was to pay the debts."

It is left uncertain which of these phrases, if any of them, was used by the defendant. It is not a fair inference from the situation or from anything said or done during the negotiations that the defendant who had no personal interest in the firm, who was not under any liability for the firm debts, and was not the purchaser of the interest of Zeiss in the firm assets, meant, or was understood by Zeiss, to bind himself personally for the payment of all the firm debts. He was present at the negotiation as the attorney of his wife, and was acting for her, and the fair construction of all the language imputed to him is that he was speaking and acting for her when he gave the assurance that all. the debts should be paid, and that assurance was carried out and embodied in the written agreement. By this construction the language imputed to the defendant is brought into harmony with the written agreement, and with the undisputed facts surrounding and attending upon its execution. The burden was upon the plaintiffs to show that the defendant agreed for himself to be personally bound to pay the firm debts, and a careful scrutiny of the record satisfies us that there is scarcely a scintilla of evidence to prove such an agreement, and the jury should not have been permitted to find it.

But suppose the plaintiffs are right in their contention

that the defendant used the language imputed to him by Zeiss, and above quoted, meaning thereby to bind himself personally, then we think it cannot be said that his agreement was made for the benefit of the plaintiffs. It was an agreement for the benefit of Zeiss to relieve him from and indemnify him against the debts of the firm without an intention to secure any benefit to the firm creditors; and as the sale was not made to the defendant, and no consideration whatever passed to him, these plaintiffs, strangers to the agreement, cannot enforce it against him. Merrill *v.* Green, 55 N. Y. 270; Simson *v.* Brown, 68 id. 353.

But the plaintiffs have to encounter a still further difficulty. The agreement imputed to the defendant is invalid under the statute of frauds because not in writing. As before stated, the sale was not to the defendant. He took no interest in the property conveyed, and received no benefit from it as all the firm property was subsequently sold and its proceeds applied upon firm debts. He was not antecedently liable for the payment of the firm debts and had no personal interest in their payment. The liability of Zeiss for the debts was not extinguished, but remained in full force unaffected as between him and the firm creditors. The defendant's promise, therefore, assuming that it was made, was to answer for the debts of Zeiss, or for the default of Kruger & Co., or for the default of Mrs. Brown, and in either event it was invalid under the statute of frauds. It matters not that there was a consideration of harm to Zeiss from his transfer of the property; there was no consideration of benefit to the defendant. For the conclusion we thus reach, the cases of Mallory *v.* Gillett (21 N. Y. 412), and Belknap *v.* Bender (75 N. Y. 446), are ample authorities.

The plaintiffs should, therefore, have been nonsuited, and hence the judgment should be reversed and a new trial granted, costs to abide event.

All concur, except RAPALLO, J., absent.