HENRY M. CRIPPEN, Appellant, *v.* SARAH A. CRIPPEN,
as Executrix, *et al.*, Respondents.

*Supreme Court, Third Department, General Term, July 6, 1889.*

1. *Contract. Promise to pay.*—Wherever a promise to pay money out of
property, to be received from a decedent's estate, in execution of
his request, has been enforced, it has been made by a person who,
by descent, devise or bequest, has received from the decedent prop-
erty out of which the proposed devise or legacy would have come,
and has prevented the making of such proposed devise or legacy;
the mere proof that the promise to pay has been made is not suf-
ficient to justify a recovery.

2. *Same.*—In order to sustain a claim that a husband has obtained
title to his wife's property by reason of a promise to her that her
money should go to her children after her death, without a will, it
must be shown that he, by virtue of such promise, obtained from
his wife's estate money which she otherwise would have given to
them.

3. *Same.*—Where the personal property of a wife came to her from her
father in 1845, and there was no evidence that her husband had
not reduced it to possession, or held it in trust for her, there is not
sufficient proof to show that he obtained any property from her
by his promise that would otherwise have gone to her children,
and a claim of her son against the estate of the husband was prop-
erly rejected.

See note at end of case.

*N. C. Moak*, for appellant.

*T. F. Hamilton*, for respondents.

LEARNED, P. J.—Riley Crippen died December 30, 1885,
leaving a will which was duly proved, and defendants were
appointed executrix and executor.

The plaintiff, a son of deceased, presented a claim which
was duly referred under the statute. The referee reported
in favor of the claim. The defendants on case and excep-
tions moved to set the report aside. The motion was
granted and plaintiff appeals.

The claim is on an alleged oral promise made by Riley Crippen to his wife, Fanny, about July, 1853.

The facts out of which the alleged promise arose are as follows:

Ephraim Wheeler died in 1840, and left surviving children, among them Fanny. There is some testimony that each daughter received about $4,000 from his estate. This is only given on recollection of witnesses, and a statement of Riley Crippen said to have been made about 1854.

Fanny Wheeler in 1845 married Riley Crippen. She died in July, 1853. There is the testimony of two or three witnesses as to statements made by him at or before her death; being about thirty years of age. These statements are in substance that when she was ill and near death she proposed to make a will, and that he told her there was no need of a written will, as everything could be carried out as she wished, and the wish was that he should have the use during his lifetime and then this money, said to be $3,900 should go to her children.

The plaintiff is one of the three children of Fanny. One other child is living who is the plaintiff in another action, and the third child is dead, leaving children.

The learned justice who decided the motion thought that the evidence was insufficient to show that Fanny Crippen had money which came from her father; that the money came to the hands of her husband, or that he made the alleged promise. He pointed out very justly that the only evidence consisted of testimony to verbal admissions, made about thirty-three years before the death of the testator, and we think that his remarks are just. It is not shown what property was received from Ephraim Wheeler's estate, nor what were the terms of his will, if, as defendant's brief states, he left a will.

If he died in 1840, then Fanny, so far as appears, became entitled to the property. When she married Riley Crippen, in 1845, her personal property became his. There is no

evidence that it had not been reduced into possession, or that he was holding it in trust for her. Therefore, when she died, in 1853, she had no personal property to dispose of. At least none is shown.

As was stated by this court in Bull v. Bull (31 Hun, 69), "the promise which has been enforced has been made by a person who, by descent or devise or bequest, has received from the decedent property out of which the proposed devise or legacy would have come, which proposed devise or legacy was prevented by the promise of the person thus held liable." This is the principle which has controlled the case. O'Hara Will, 95 N. Y. 403.

Certainly a promise, where the promisor owns the property and the promisee does not, can create no legal obligation. It is the wrong done to the promisee, by preventing him from doing what he would otherwise have done with his own property, which makes this kind of promise binding.

To sustain this report of the referee, then, it must be shown that Riley Crippen, by virtue of the alleged promise, obtained from his wife's estate after her death the title of this money, which would otherwise have been given by her to her children. Unless this be shown, then her will, if executed, would have been of no avail to them.

We agree with the learned justice that this has not been shown; and we think that the order should be affirmed with costs. The same disposition is made of the case of Emily Wood against the same defendants.

---

NOTE ON PROMISE BY ONE TO ANOTHER FOR THE BENEFIT OF A THIRD PERSON.

This principle is found laid down among the earliest reported decisions of this state; but has had a hard struggle to maintain its existence. It was denied and disputed until the court of appeals in Lawrence v. Fox, established it upon a firm foundation, from which it has not since been removed, though it has been defined, refined and narrowed down until its application has become greatly limited.

Note on Promise by One to Another for the Benefit of a Third Person.

The party claiming the benefit of the promise must have a legal claim against the promisee which will be a substitute for privity with the promisor. This claim may be based upon a valuable consideration or moral obligation.

The rights and obligations under such agreements are limited to the contracting parties, unless it was entered into, in whole or part, for the benefit of the person or persons, claiming to come in under its stipulations. Proper care must be used by the court for the purpose of determining whether or not the immediate persons to the contract intended that a third person should derive a benefit and advantage from the promise, and thus secure a right to enforce it by an action in his own name.

There must be an existing claim against the promisee in favor of the third person, and an engagement by the promiser to discharge his own liability to the promisee by the payment or satisfaction of such claim, in order to render the promise enforceable by the third person. This existing claim may consist of money or property placed in the promiser's hands at the time, but whether it may consist of a past indebtedness depends upon the fact of a new consideration, arising from the fact of release or satisfaction of such debt.

It is not sufficient to entitle the third person to maintain an action, that he may be benefited by the performance of the promise; but, as he is neither privy to the contract nor to the consideration, the agreement must be made for his benefit for its object, and he must be the party intended to be benefited.

Where a grantee assumes an existing mortgage as part of the consideration for the conveyance, and the amount of the mortgage is deducted from the purchase price and left in his hands for the purpose of paying such incumbrance, he is personally liabl to the mortgagee to pay the same, in case his grantor was so liable to the holder. But in case his grantor was under no personal obligation to pay the mortgage, the mortgagee cannot maintain an action upon the assumption clause.

An agreement to assume the payment of an existing mortgage when contained, not in an absolute conveyance, but in a mortgage, or in a conveyance, which in equity, amounts only to a mortgage, does not impose upon the second mortgagee, making such an agreement an absolute, continuing personal liability, which can be enforced by the second mortgage.

A person, not a party to the promise, but for whose benefit the promise was made, cannot maintain an action to enforce the promise, where it is void between the promiser and the promisee, for fraud, or want or failure of consideration.

Where a party purchases the goods of a firm, or one partner, the interest of his copartner, upon an agreement to pay the firm creditors, the right of a creditor to enforce the promise for his own benefit, depends upon the fact whether the agreement was made for the benefit of the creditors or a certain class of them, or for the benefit of the promisee only ; or whether

the creditors are sufficiently identified as belonging to the class, who were to be paid, or no class is named or described to be paid by the promiser, or the extent is left absolutely uncertain and undetermined.

Where a person who, by descent, devise or bequest, has received from a decedent, property, out of which he promised to pay an amount in accordance with the decedent's wish, it must be shown, in order to recover upon such promise, that he has received the property ; the mere proof of such promise is not sufficient to justify a recovery.

The right of the third party, before he has accepted and adopted the promise, is subject to the relations and equities of the original promiser and promisee, and the destruction of the consideration on the one hand and the rescission and annulment of the contract on the other, bar and prevent him from any right of action upon the promise. An acceptance or adoption of the promise on his part, by word or act, is essential.

Such a contract, however, is not revocable by the promisee after it comes to the knowledge of the third person, and he has assented to it, and a release is wholly ineffectual to destroy his right of action. Such release may discharge the liability of the promiser to the promisee. The state decisions sustaining these propositions follow.

*When action maintainable.*—In Schermerhorn *v.* Vanderheyden, 1 Johns, 139, the facts were that, in consideration of an assignment of certain personal property by plaintiff's wife's father to the defendant, the latter promised to purchase for plaintiff's wife a cherry desk. He failed to do so, and for that breach the action was brought by the plaintiff, suing in his wife's right. It was objected that no action could be maintained by the plaintiff on the promise made to his wife's father; but the court held otherwise remarking that, where one person makes a promise to another for the benefit of a third person, the latter may maintain an action on such promise, citing Dutton *v.* Poole, 2 Levinzs, 210, and saying that the same principle has since that time been repeatedly sanctioned by the decisions of the English courts.

While a different rule is said to prevail in those tribunals at the present time, and there even in equity the doctrine of the earlier cases may be considered as unsettled, the courts in this state have uniformly adhered to this principle. In 1817, it seems to have been approved by Chancellor Kent, in Cumberland *v.* Codrington, 3 Johns. Ch. 254. The question came directly before him in 1823, and he held that where a father conveyed land to his son on the latter's covenanting to pay an annuity to his mother during her widowhood, she might maintain an action on the covenant so made for her benefit. Shepard *v.* Shepard, 7 Id. 56 ; and in 1845, his successor says it has been the settled law fro them time of the decision of the case of Dutton *v.* Poole, *ante*, down to the then present time, that a party for whose benefit a promise is made may sue in assumpsit upon such promise though the consideration for such promise moved between the promiser and a third person.

20

Note on Promise by One to Another for the Benefit of a Third Person.

Such was also the conclusion of the late supreme court of this state, after a full examination of the authorities, in Barker *v.* Bucklin, 2 Denio, 45. It was also held by the present supreme court in 1859, in Judson *v.* Gray, affirmed by the court of appeals in 17 How. 289.

In Farley *v.* Cleaveland, 4 Cow. 432 ; 9 Id. 639, one Moon owed Farley and sold to Cleaveland a quantity of hay, in consideration of which Cleaveland promised to pay Moon's debt to Farley ; and the decision in favor of Farley's right to recover was placed upon the ground that the hay received by Cleaveland from Moon was a valid consideration for Cleaveland's promise to pay Farley, and that the subsisting liability of Moon to pay Farley was no objection to the recovery.

In Barker *v.* Bucklin, 2 Denio, 45, a party, who was indebted to the plaintiff, sold property to the defendant who agreed to pay the price of it to the plaintiff, on account of the latter's demand against the seller, and it was held that the plaintiff might maintain an action on such promise against the defendant.

In the D. &. H. C. Co. *v.* The Wheschester Co. Bank, 4 Denio, 97, a firm who were indebted to the plaintiffs, placed a bill of exchange in the hands of the defendant for collection, who, upon consideration thereof, undertook to collect it, and to pay the amount, when collected, to the plaintiffs in satisfaction of their debt against the said firm, and the defendant collected the bill of exchange. In an action by plaintiff against defendant upon such agreement, it was held that they could maintain an action against it on that promise.

As long ago as 1817, chancellor Kent laid this principle down as a point decided, and referred to not less than eight English and American cases as sustaining it. Cumberland *v.* Codrington, *ante.* Since then it has been frequently affirmed by judges, after an attentive examination of cases, as in Barker *v.* Bucklin, *ante,* and in the cases therein cited. Some of the opinions in these cases were pure *obiter dicta* and in others, the cases though presenting the point were decided upon other grounds. It could not however be denied, that the doctrine had been so often asserted, that it had become the prevailing opinion of the profession, that an action would lie in such a case in the name of the creditor, for whose benefit the promise was made. Finally the question came squarely before the court of appeals in Lawrence *v.* Fox, 20 N. Y. 268, and it held, with hesitation on the part of a portion of the judges who concurred, while others dissented, that the action would lie. The precise point decided in this case has been regarded since as definitely settled, so far as the courts of this state are concerned.

Where one person makes, upon a valid consideration, a promise to another for the benefit of a third person, the latter may maintain an action upon it, although not privy to the consideration. Lawrence *v.* Fox, *ante.* In this case, a party, at the request of defendant, loaned him some money, upon his promise to pay it to the lender's creditor, who brought an action

upon such verbal promise and recovered, without proof that the lender was indebted to him.

The later cases limiting Lawrence *v.* Fox, seem to require, as a condition of maintaining the action, that the party claiming the benefit of the performance shall have a legal claim against the promisee which will be a substitute for privity with the promisor. Litchfield *v.* Flint, 22 W. Dig. 286.

In the same case on appeal to the court of appeals, the rule laid down in Vrooman *v.* Turner, 69 N. Y. 280, that a legal obligation or duty of the promisee to the third party will so connect him with the transaction as to be a substitute for any privity with the promisor, or the consideration of the promise, the obligation of the promisee furnishing proof of the intent of the latter to benefit him, and creating a privity by substitution with the promiser, was applied in the case of the promise to pay a note made to one who is liable thereon as indorser. 104 N. Y. 543. In such case even though the promiser is not liable to the holder of the note, yet, if the indorser has become the owner thereof by transfer from the holder subsequent to the promise, he may enforce such promise as a party to it, as he holds, not only all rights which the owner of the note had under the promise, but all the rights which he had as a party thereto.

The case of Lawrence *v* Fox, *ante*, has been the cause of many experiments in the courts, and productive of an abundant and odd lot of law suits. It has been explained, criticised, limited and questioned but never overruled. Thirty years have elapsed since it was decided, yet the principle upon which it rests is still a matter of uncertainty and dispute. It has been followed as a controlling authority in all cases presenting similar facts, but the doctrine of the case was established with difficulty, has been yielded to with reluctance, and the courts have steadily refused to extend its application to new cases. All that this cases decides is, that where one person loans money to another upon his promise to pay it to a third party to whom the party so lending the money is indebted, the contract thus made by the lender is made for the benefit of his creditor, and the latter can maintain an action upon it without proving an express promise to himself from the party receiving the money. Lorillard *v.* Clyde, 56 Super Ct. 14; Garnsey *v.* Rogers, 47 N. Y. 240.

A right of action does not accrue to a third party, because a promise has been made by one to another for his benefit.

The prevailing opinion in the case of Lawrence *v.* Fox, *ante*, rested the creditor's right upon the broad proposition that the promise was made for his benefit, and therefore he might sue upon it, though privy neither to the contract nor its consideration. Two of the judges who concurred in this decision stood upon a different proposition. They held that the promisee . accepted the promisser's covenant, as agent of the third person, who might ratify the act with the same effect as though he had originally authorized it.

But another basis for the action has been asserted, applicable, however,

only to cases where the grantee has assumed the mortgage and, on its foreclosure, the mortgagee seeks a judgment for deficiency against the grantee. In Burr *v.* Beers, 24 N. Y. 178, and again in Garnsey *v.* Rogers, *ante,* it was pointed out that the liability of the grantee to the mortgagee rested upon the equitable right of subrogation and had been recognized and enforced long before Lawrence *v.* Fox was decided. It was held that where the mortgagor acquired a new security for his indemnity against the debt which he owed to the mortgagee, the latter might in equity be subrogated to the right of his debtor, and, under the statute permitting any person liable for the mortgage debt to be made defendant and charged with a deficiency in the foreclosure, the new covenant became available to the mortgagee. It was so held in Halsey *v.* Reed, 9 Paige, 446, and the right of the mortgagee was put upon the equity of the statute. This proposition was all very well so long as there was supposed to be no equivalent remedy at law, but, after the decision of Lawrence *v.* Fox, the latter remedy existed, and in Thorp *v.* Keokuk Coal Co., 48 N. Y. 258, the court said that it saw no reason for invoking the doctrine of equitable subrogation, or resting upon it in such a case.

A fourth suggestion respecting the basis of these rights of action appears in the opinion of Andrews, J., rendered when the case of Gifford *v.* Corrigan was before the court of appeals the first time. 117 N. Y. 257. "After all," he says, "does not the direct right of action rest upon the equity of the transaction?" On a subsequent appeal of this case to the court of appeals, the court says: "If we discard the fictitious theory of an agency, what remains is the equitable right of subrogation swallowed up in the greater equity of the legal right founded on the theory of a promise made for the benefit of the creditor. It is *no new thing for the law* to borrow weapons from the arsenal of equity."

In Judson *v.* Gray, 17 How. 390, the defendant, who was the attorney for the party to a suit, requested his client to give him a promissory note for the amount of the fees due the plaintiff as referee in the case, under an agreement that he would thereupon pay the plaintiff his fees, and the note was accordingly given. The court allowed a recovery, but announced no new doctrine; it, in the opinion, stated that, as the agreement in question was made for the benefit of the plaintiff on a sufficient consideration, and had been adopted by him, he can maintain an action against the defendant upon such agreement; that it is not necessary that the money should actually come into the defendant's hands to render him liable, but any property which he may receive is a good consideration for his agreement to pay; that the note was a valid security in the hands of the defendant, and a good and sufficient consideration for his promise to pay his client's debt to the plaintiff.

In Mittenbeyer *v.* Atwood, 18 How. 330, the complaint alleged that, on an accounting had between the drawers and drawees, there was left in the hands of the drawees, sufficient money to pay a certain draft, and

Note on Promise by One to Another for the Benefit of a Third Person.

which the drawees then agreed to pay to the holder, but subsequently refused to accept. In an action on said draft by the holder against the drawees, the promise was held to be valid, and a sufficient foundation for an action by the person for whose benefit the promise was made.

In Secor v. Law, 4 Abb. Ct. Ap. Dec. 188, it was held that, where the associates of defendant paid him their respetive shares of a certain demand, and he agreed with them to pay and satisfy the holders therefor, this rendered him individually liable to the holders upon such demand, irrespective of the question whether he was solely liable upon the contract.

In Seaman v. Hasbrouck, 35 Barb. 151, it was held that a parol promise of a party, to whom a conveyance of lands is made for the purpose of paying, in addition to certain debts owing by the grantor to such party, certain debts of the grantor owing to third persons, was valid and obligatory upon the promisor, without the concurrence or consent of the creditors being given to the arrangement, and without any suspension or extinguishment of the claim of those creditors, as against the original debtor.

The purchase money may be regarded as a fund intended directly for the benefit of the specified creditors of the grantor who have such an interest in the appropriation of the fund in question that they can bring an action in their own names to recover their debts of the defendant, whether they knew of this arrangment at the time, or subsequently assented to it, or required it to be done at some future period.

Where a father has conveyed land to his son upon the latter's orally agreeing, in consideration of the conveyance, to pay his indebtedness, his creditors were permitted, in Kingsbury v. Earle, 27 Hun, 141, to maintain actions against the son to recover their debts. In such case the right of action is not limited in its extent by the consideration actually received by the defendants; nor is it of any importance whether or not such an agreement is in writing. It was a promise to pay one's own debt, and if there was a good consideration, the promise was binding to its full extent.

In Barker v. Bradley, 42 N. Y. 316, a party agreed to pay the plaintiff $2,000 for his interest in the property of a company and subsequently the defendant's testator, upon a consideration passing between him and the purchaser, promised to pay the $2,000 to the plaintiff. It was held upon the authority of Barker v. Bucklin, ante ; Lawrence v. Fox, ante ; and Judson v. Gray, ante, that a verbal promise to pay the debt of a third person to the plaintiff, made by the defendant upon good consideration moving from such person, will support an action by the plaintiff against the defendant, although the former was not a party to the agreement and it was made without his knowledge.

In Coster v. The Mayor of Albany, 43 N. Y. 399, an agreement was made by the city of Albany, under its corporate seal, with the state, for the protection and indemnity of the state, and the payment of all damages caused to property, and by it the city, in consideration that the state would do

certain work, and in view of the certain result, that damage must be done to property in the doing of it, assumed all liability therefor, and promised that it would pay such damage. In an action by a property owner who has suffered.damage in the performance of such work, it was held that he could enforce the promise against the city in his own name, and that the promise was made to the state, for the benefit of any third person, to whose property damage was caused.

In Hutchings v. Miner, 46 N. Y. 456, a policy of insurance upon the life ·of one was made payable to and held by another person, but was so held, in whole or in part, for the benefit of the insured, or of, whomsoever he shall designate; and it was held that, if the insured suffers it to remain in the possession of the holder, upon his promising to pay a debt of the insured out of the avails of the policy when collected, this was a valid consideration for the promise, and the creditor, for whose benefit it was made, though having no knowledge of it at the time, can affirm and force it.

In Pulver v. Skinner, 42 Hun, 322, a grantee, in consideration of the conveyance to him of certain real and personal property, assumed and agreed to pay certain indebtedness, and to save him harmless therefrom. The grantee died, and his administrator entered into an agreement with defendant, as executor, to convey, or cause to be conveyed, the said property to defendant, and defendant was to pay such indebtedness. Subsequently the widow and all the heirs of the deceased grantee, except a minor, conveyed the real estate to the defendant, as such executor, in consideration of $11,000; and in consideration of this conveyance, defendant executed to said administrator, as attorney in fact for the widow and heirs, a bond, reciting the existence of the claim against the estate, and conditioned that the obligor should pay, or cause to be paid, the aforesaid claim and save the said estate harmless, and within four months deliver receipts for such payments to the obligee; and by the bond he further agreed to and with the owners of said claims to pay all that is justly due them, not exceeding the said amounts. In an action by the creditors of the former grantor against the defendant, it was held that they could maintain an action against him, upon the bond, to recover the amount of said claims.

The intent of the promisee was to secure a benefit to these creditors and there was a privity between them, and an obligation or duty owing from the promisee; though there was not a personal obligation on the widow and heirs to pay the debt, there was some obligation or duty resting on the administrator and on the heirs in respect to the creditors, as it was the duty of the administrator, in default of sufficient personal property, to cause the real estate to be applied to the debts.

The authorities bearing upon the right of one party to avail himself of an agreement entered into exclusively between others were collected and considered in Edick v. Green, 38 Hun, 202, and the result was declared to be that the rights and obligations under the agreement should be limited to the contracting parties, unless it appeared to have been entered into, in

whole or in part, for the benefit of the person, or persons, claiming to come in under its stipulations. Attorney-General *v.* Cont. Life Ins. Co., 43 Hun, 639. This was also held to be the rule in Simson *v.* Brown, 68 N. Y. 355.

In Attorney-General *v.* Cont. Life Ins. Co., *ante*, it was held that, where by the terms of an agreement one company assumes the liabilities of another, on condition that the parties having claims against the latter company, which claims constitute the assumed liabilities, perform certain acts, the performance of these acts is necessary before the claimants can obtain the benefit of the original agreement.

In Sackett *v.* Sackett, Supr. Ct. Sp. T. October, 1887, the defendant, in consideration of being allowed to purchase the premises at the sale for the sum which he paid therefor, promised and agreed with his father, before and at the time of the sale, that he might remain in the possession and use of the premises during his life, free from rent, and at his death he would pay to each of his three sisters one third the value of the premises after deducting therefrom the amount paid by him for the premises on the foreclosure sale. After the father's death one of the sisters commenced an action on the defendant's promise made to her father, and it was held that she could maintain the action. The court said that the law is now well settled in this state that, upon the facts of this case, an action may be supported in the name of the person intended to be benefited by the promise. The cases bearing on the subject affirm the principle that, where one person makes a promise to another for the benefit of a third person, the latter may maintain an action thereon. In applying this principle of law to particular cases, proper care must be used by the court for the purpose of determining whether or not the immediate parties to the contract intended that a third person should derive a benefit and advantage from the promise, and thus secure a right to enforce the same by an action at law in his own name. Id. Barker *v.* Bucklin, *ante;* Lawrence *v.* Fox, *ante;* Burr *v.* Beers, *ante;* Pardee *v.* Treat, *ante;* Todd *v.* Weber, 95 Id. 181–194; Farley *v.* Cleveland, *ante*.

There must be some obligation or duty owing from the promisee to the third party, which will give the latter a legal or equitable claim to the benefit of the promise, or an equivalent from the promisee personally. Lorillard *v.* Clyde, *ante*.

In Vrooman *v.* Turner, *ante*, the court said that in every case in which an action has been sustained, there has been a debt or duty owing by the promisee to the party claiming to sue upon the promise. Whether the decisions rest upon the doctrine of agency, or upon the doctrine of a trust, there must be a legal right, founded upon some obligation of the promisee, in the third party, to adopt and claim the promise as made for his benefit.

The benefit to the promisee, however, is not the basis upon which any of these cases rest. It is the promise made for the benefit of the third party that the courts enforce, and the privity between him and the prom-

isee which the law requires, is that which arises from some debt or duty, due from the latter to the former, which the promisor engages to discharge. In other words, there must be, first, an existing claim against the promisee in favor of a third party, and, second, an engagement by the promisor to discharge his own liability to the promisee by the payment or satisfaction of such claim. In the absence of either of these conditions, the doctrine of Lawrence *v.* Fox, has no application. Lorillard *v.* Clyde, *ante.*

In Cooley *v.* Howe Machine Co., 53 N. Y. 620, an assignor being indebted to defendant sold and assigned to it certain personal property to apply in payment and transferred other property as collateral security for the payment of the balance of the indebtedness, and to pay certain other debts of the assignor set forth in a schedule annexed to the assignment, not exceeding the amount therein specified. In the schedule was set out a note to plaintiff. In an action to recover the amount of the note, it was held that the assignment was a fixed arrangement for plaintiff's benefit, which could not be changed without payment of plaintiff's debt, and that the action was maintainable.

In the supreme court of the United States, Hendrick *v.* Lindsay, 93 U. S. Rep. 143, it is said that the right of a party to maintain assumpsit on a promise not under seal, made to another for his benefit, though much controverted, is now the prevailing rule in this country.

Within the principles of adjudged cases in the court of appeals, where the plaintiff seeks to base his right to maintain an action against a third party upon a contract made between that party and another, it must be one made or intended for his benefit. Such a beneficial intent must be clearly found in the agreement. Beveridge *v.* N. Y. E. R. Co., 112 N. Y. 1. In all of the cases where an action has been sustained upon such promise, the facts showed that the promise clearly was for the third person's benefit, and made with that distinct intention. Id. Wheat *v.* Rice, 97 N. Y. 296; Vrooman *v.* Turner, *ante;* Borlow *v.* Myers, 64 Id. 43; Lawrence *v.* Fox, *ante.*

*When not maintainable.*—The case of Seaman *v.* Whitney, 24 Wend. 260, has occasionally been referred to, but not by the courts, not only as having some bearing upon the question now under consideration, but as involving in doubt the soundness of the proposition stated in Schermerhorn *v.* Vanderheyden. In that case one Hill made his note and procured it to be indorsed by Seaman and discounted by the Phœnix Bank. Before the note matured and while it was owned by the Phœnix Bank, Hill placed in the hands of the defendant, Whitney, his draft accepted by a third party, which the defendant indorsed, and subsequently got discounted and placed the avails in the hands of an agent with which to take up Hill's note ; the note became due, Whitney withdrew the avails of the draft from the hands of his agent and appropriated it to a debt due him from Hill, and Seaman paid the note indorsed by him and brought his suit against Whitney. Upon this state of facts appearing, it was held that Seaman could not recover:.

first, for the reason that no promise had been made by Whitney to pay, and second, if a promise could be implied from the facts that Hill's accepted draft, with which to raise the means to pay the note had been placed by Hill in the hands of Whitney, the promise would not be to Seaman, but to the Phœnix Bank, who then owned the note ; and although, in the course of the opinion of the court, it was stated that, in all cases where this principle was sought to be applied, the fund had been appropriated by an express undertaking of the defendant with the creditor, yet, before concluding the opinion of the court, the learned judge who delivered it conceded that an undertaking to pay the creditor may be implied from an arrangement to that effect between the defendant and the debtor.

In Hoffman *v.* Schwaebe, 33 Barb. 194, a vendee assigned a contract for the sale of land, for which the assignee gave his two promissory notes payable one year from date, with interest. The notes were signed by the plaintiff, as surety for the assignee ; subsequently the assignee assigned the same contract to defendant, who made an agreement with him in part consideration thereof, to pay the notes which had been given to the former assignor by the assignee. The surety, having paid the notes, brought an action against the defendant to recover the amount so paid, and it was held that although, under the facts of the case, the agreement of the defendant to pay the notes, was a valid one, yet there was no privity between him and the plaintiff, which would sustain an action by the latter.

In this case, the assignee, when the promise was made, did not owe the plaintiff, and the plaintiff had no right of action against any one, and could have none, till he had paid the notes upon which he was surety for the assignee ; and though it would have been benefited had plaintiff fulfilled his agreement with the assignee, there is a plain distinction between a promise, the performance of which may benefit a third party, and a promise made expressly for the benefit of a third party ; and the promise of the defendant belongs to the former class. The courts have not yet held that an action on such a promise can be maintained by the person who would be benefited by its fulfillment.

Where an assignee, in the asssignment of a contract, assumes debts incurred by his assignor in its performance, to the extent of a specified sum, and no more, and pays more than the amount specified, it was held, in Odell *v.* Muley, 9 Daly, 381, that the remaining creditors have no recourse against him.

In Wise *v.* Morgan, 13 Daly. 402, the defendant, with others, upon the consolidation of two insurance companies guaranteed that the contract obligations of one of the companies with its policy holders would be rigorously fulfilled to the same extent and in the same manner as though the consolidation had not taken place, and it was held that this was not to be construed as granteeing the payment of all the policies theretofore issued by such company, and did not, within the doctrine of Lawrence *v.* Fox, *ante,* entitle a policy holder therein, upon the subsequent insolvency of the com-

pany, to maintain an action against the defendant for the amount of his policy.

The elementary writers agree that, in general, persons who are not parties to a contract have no concern with it. The exception to the rule, as stated, seems to be that an action of assumpsit for money had and received will lie, whenever the defendant has in his hands money which in equity and good conscience belongs to the plaintiff. Cases of relationship also formed an exception, but have ceased to be such. Meyer v. Stitz, City Ct. N. Y., March 24, 1890.

In this case a party promised plaintiffs that if they would release their claim against defendant he would lift the balance of the account. Plaintiffs assented to this, but no release was executed, and it was held that it was no record, release or extinguishment of the debt, and that plaintiffs could not maintain an action on the promise.

In McCafferty v. Decker, 12 Hun, 455. the defendant contracted with a railroad company to build its road, and agreed that, in all cases of non-payment of laborers by him the company might pay and deduct the same from the amount due him. He subsequently sublet a portion of the work to subcontractors who assigned the subcontract to another party who absconded without paying the amount due to his laborers. Plaintiff had sold goods to the laborers on credit. After the assignee absconded, the defendant paid the laborers the amount due for wages, less what was due to the plaintiff, and the laborers agreed to this deduction provided the defendant would pay it to the plaintiff. In an action brought by the plaintiff to recover the amount so deducted, it was held that, even though there was a promise by the defendant to pay the money to the plaintiff, the same could not be enforced, as there was no consideration therefor, for the reason that the defendant did not owe the workmen, and no liability on his part had arisen under his contract with the railroad company. To give a third party, who may derive a benefit from the performance of the promise, a right of action, there must be a sufficient consideration passing between the promise and his immediate promisee, and then the third person must adopt the promise and then bring himself into privity with the promisor. If there is no consideration, the promise is void as in all other cases.

In the case of McCafferty v. Decker, ante, no consideration passed to the defendant for his promise. If he had owed the workmen, and they had left the money which he owed them, or any part of it, in his hands on a promise to pay it to the plaintiff in discharge of their liability to him, the plaintiff could have adopted that promise and maintained his action against the defendant upon the principles of Lawrence v. Fox, and kindred cases. But as the defendant did not owe the workmen, the principles of those cases cannot be invoked in the plaintiff's aid.

In Kelly v. Roberts, 40 N. Y. 432, the purchaser of a stock of goods promised, in writing under seal, to pay for the same at an agreed price. After

Note on Promise by One to Another for the Benefit of a Third Person.

the sale was complete and the goods delivered, the purchaser agreed with the sellers, to pay a part of the purchase money to certain of their creditors, and by the arrangement was to retain in his hands a sufficient portion of the purchase money for that purpose. Before such payment was made by the purchaser, other creditors of the sellers sued out an attachment against their property, and the purchaser's obligation was seized and levied upon and the sheriff brought an action upon the original promise of the purchaser, as contained in his covenant ; and, in the litigation, the question presented was, whether the promise of the purchaser made, prior to the attachment, to pay particular creditors was binding upon him and constituted a defense to the action. And it was held that his promise, not being based upon any consideration, was not valid and obligatory, and the creditors, whose debts he had promised to pay, had no legal claim against him; that his parol promise was simply an executory contract without consideration and was not enforceable, and if the sellers had sued the defendant upon his covenant for the price of the goods, he could not have defended by proof of such prior parol agreement. The court, in the course of its opinion, remarked that had the sellers and the purchaser made it a condition of the sale of the goods of the former to the latter, that the latter should pay a designated part of the purchase price to the creditors whose debts he afterwards agreed to pay, then the case would have fallen within the principle laid down in Lawrence *v.* Fox, that where a promise is made upon a valid consideration to one person for the benefit of another, the latter may maintain an action thereon.

In Turk v. Ridge, 41 N. Y. 201, the defendant, in consideration of a conveyance of a farm to him, executed and delivered to the grantor a bond, conditioned that the same should be void, if the defendant should pay a certain promissory note given by the grantor to the plaintiff, and should indemnify and save harmless the said grantor against the note, otherwise to remain in full force and virtue. The plaintiff, after judgment against the grantor on the note and execution thereon returned unsatisfied, brought an action against the defendant, upon the condition of the bond, and it was held that the bond was merely one of indemnity to the grantor to save him harmless from the note, and not a promise to him for the benefit of the plaintiff, and that the plaintiff could not recover.

In Johnson v. Morgan, 68 N. Y. 494, a committee of bondholders of a certain railroad company failing to effect a reorganization of the company, and acting for themselves and the owners of the bonds in their hands, entered into a contract with defendant by which they agreed to sell, and he to purchase the bonds of said company at fifty cents on a dollar for the first mortgage land-grant bonds, one third cash, the balance in satisfactory paper. It was also agreed that all the holders of said bonds, who had registered them, should have the option of accepting the same price and terms. In an action upon the contract by plaintiff, who held some of the bonds, but was not one of the parties to the agreement, it was held

that defendant did not agree to purchase of each bondholder, nor to pay to each the purchase price but to purchase of and pay the said committee; and that through them only could the option given to other bondholders be consummated; and that the case did not come within the principle of Lawrence v. Fox, ante, and kindred cases.

In Roe v. Barker, 82 N. Y. 431, plaintiff contracted to convey certain premises for $1,350, of which $300 were paid down, and the balance was agreed to be paid in annual installments. The grantee, reserving his right to redeem, assigned his contract to defendants in payment of two notes, upon the latter's agreeing to pay enough in addition to make the purchase price $300. In an action brought by plaintiff to recover installments due and unpaid on the contract, it was held that the evidence failed to show an express agreement on the part of defendants to pay the balance to plaintiff; and that there was, therefore, no assumption of the debt, so as to make it a debt of defendants, at least no promise intended for the benefit of plaintiff; and plaintiff was not entitled to recover. The right of redemption was reserved to the grantee by the assignment, and while that remained, the promise, if made, is not absolute, and is plainly intended solely for the benefit of the other party to the contract, and not at all for that of the creditor. That it may result in a benefit to the latter, is not enough to give him an absolute right of action. The cases of Richard v. Sanderson, 41 N. Y. 179; Cooley v. Howe Machine Co., ante, Campbell v. Smith, 71 Id. 26, do not conflict with this rule. In all of them, the covenant to pay was absolute, and the liability fixed, and it was upon that distinct ground that the creditor's right of action was sustained.

In Seward v. Huntington, 94 N. Y. 104, three persons who had jointly indorsed the notes of a manufacturing corporation, entered into a written agreement with each other to the effect that, if the corporation should fail to pay said notes at maturity, they would each pay one third of the amount unpaid, and in case of failure of either to pay his proportion, and either of the others should pay more than his share, the one so paying should have and recover from the one so failing an amount equal to his aliquot part. It was also provided that, in case of failure of one of the parties to pay his share of the unpaid paper, and which either of the parties shall have paid in whole or in part, then and in that case the trustee named in a mortgage given as security for the performance of said agreement, is empowered, and it shall be his duty, at the request of the parties so having paid, to foreclose the mortgage made by the party so failing to pay. The corporation made default in the payment of certain of the notes, and it appeared that the corporation and the indorsers were insolvent, and that nothing had been paid upon said notes by any of the parties.

In an action brought by the trustee and the holders of said notes to foreclose the mortgage, it was held that the trust imposed no primary liability upon the parties to the agreement; and that this case was not

within the principle laid down in Lawrence v. Fox, *ante*, and Burr v. Beers, *ante*, for the reason that the agreement in question was not intended by the parties thereto to operate for the security or benefit of the plaintiffs, who are creditors of the corporation.

In Fairchild v. Feltman, 32 Hun, 398, the defendant made a parol promise *to* his creditor and the plaintiff that he would pay *to* the latter the sum of $100 to apply on the amount due from defendant's creditor to plaintiff. Defendant's creditor gave him credit for that sum in an account kept against him. The defendant was not released by his creditor from his indebtedness, nor was the relation of debtor and creditor existing between them in any way changed. In an *action by plaintiff against defendant*, it was held that there was no sufficient consideration to support the promise of the defendant to pay the plaintiff, and that the latter could not maintain an action thereon.

In the case of Lawrence v. Fox, and in all the others of the same class, of which there are many, it will be found on examination that there was a good and valid consideration passing to the promisor at the time of the promise, and that the agreement containing the promise was in the nature of an original agreement between the promisor and the party from whom the consideration moved.

But in the present case, the promise made by the defendant to pay to the plaintiff the debt which he owed his creditor was a mere *nudum pactum*. The promise made by the defendant to his creditor to pay the debt which the latter owed to the plaintiff was also without any consideration to uphold it. At the time the latter promise was made, the relation existing between them was that of debtor and creditor based upon previous and completed transactions. It was nothing more than an executory parol promise without consideration to discharge his creditor's obligation to the plaintiff.

In The Nat. Bank of Sing Sing v. Chalmers, 39 Hun, 468, a judgment was entered by confession in favor of a judgment creditor against a firm for $13,798.74, of which $11,463.12 were for money due and to become due to the judgment creditor, and $2,335.62 for liabilities of the debtor firm to other persons which were severally specified in the statement as liabilities assumed. After an execution had been issued on this judgment, and a levy thereunder had been made upon certain articles of personal property, the judgment was set aside on the motion of a junior judgment creditor. Prior to the entry of such judgment the firm had given the judgment creditor a mortgage on all its real and personal property; but on a foreclosure of said mortgage all the property was sold to the judgment creditor. At the time of the confession of the judgment he did not receive any property or anything, nor subsequently under the judgment or by virtue of it. In an action against the judgment creditor by the creditors of the firm whose claims were entered into the confessed judgment, to recover the

amount of their respective claims, it was held that there was no considera-
tion for an assumption by the judgment creditor of the liabilities specified
in the confession of judgment, and that the holders and owners thereof
could not maintain actions against him to recover the amount of their
respective claims.

The judgment taken by the judgment creditor was, at most, but a se-
curity to be enforced as a lien, and was, therefore, like the mortgage in
the case of Garnsey v. Rogers, *ante*.   In that case, there was a stipulation
in the mortgage whereby the mortgagee assumed and agreed to pay a prior
mortgage on the premises, and it was held that the stipulation imposed
upon the mortgagee no personal liability for the prior mortgage debt which
could be enforced against him by the prior incumbrancer.

When this case was on appeal, before the court of appeals, it was held
that there was in this case sufficient evidence from which the jury might
have found a good consideration for the promise to pay the plaintiff.   The
court said that, in most of such cases, the promise of the defendant was
made to the debtor to pay his debt to his creditor, but in this case the
promise was made to the creditor to pay the debt owing by its debtors to
it, and the promise was also made to the debtors to pay the debt they owed
the creditor.   The promise was two-fold, being to the creditor and to the
debtors.   If the promise had been made only to the debtors upon a suf-
ficient and proper consideration to pay their debt to the creditor, the latter
could maintain an action to recover it in its own name.   See also Todd v.
Weber, 95 N. Y. 194; Barker v. Bucklin, *ante ;* Judson v. Gray, *ante*.

In Comley v. Dazain, 53 N. Y. Super. 516, it was held, where plaintiffs
sold and delivered goods to defendant upon his promise to use his efforts
to sell them at a suitable price, with the consent and approval of the
plaintiffs, and to pay the proceeds of the sale ratably among the creditors
of the plaintiffs, that his sale of the goods without plaintiffs' consent
created a cause of action in favor of the plaintiffs, but not in favor of such
creditors.

This case went upon appeal to the court of appeals, and is found re-
ported in 114 N. Y. 161.   This court held that, while the creditors may
have been interested in the performance of the contract, they had no bene-
ficial interest in the contract itself, because they were not parties to it, and
the sale was to be made, not for their benefit, but for the benefit of the
plaintiffs; citing Simpson v. Brown, *ante;* Brooman v. Turner, *ante*.   The
court says that there is no evidence of any acceptance or adoption of the
arrangement by the creditors, and hence they had no legal interest in the
promise of the defendant as to distribution.   See Wheat v. Rice, *ante.*
The direction as to distribution was, therefore, held not to be irrevocable,
but at any time before the creditors had changed their position, it could be
revoked by the plaintiffs.   See Kelly v. Roberts, *ante*.

In Simpson v. Brown, *ante*, a mortgagee assigned to plaintiff a bond and
mortgage to secure $500, and the mortgagor, without notice of the assign-

Note on Promise by One to Another for the Benefit of a Third Person.

ment, paid the bond to the mortgagee, who thereafter executed a bond to the mortgagor in the penal sum of $1,000, conditioned that if the mortgagee paid to plaintiff the amount of the bond and mortgage and saved the mortgagor harmless therefrom, the bond should be void. Defendant guaranteed the payment of the bond. It was held that an action upon the guarantee by the plaintiff could not be maintained, for the reason that the obligation was not to pay to plaintiff, but to the mortgagor, and the condition was not a promise, but an alternative for the benefit of the obligor, thereby providing a way by which he might be discharged from his obligation. Though it might be said, in a way, that he was benefited by the payment of the bond, yet it is not every promise made by one to another, from the performance of which a benefit may ensue to a third, which gives a right of action to the latter who is neither privy to the contract, nor to the consideration, to entitle him to maintain an action. The contract must be made for his benefit as its object, and he must be the party intended to be benefited. Id. Ætna Nat. Bk. *v.* Fourth Nat. Bk., 46 N. Y. 82; Garnsey *v.* Rogers, *ante;* Merrill *v.* Green, *ante;* Turk *v.* Ridge, *ante.*

An agreement by the organizers of a corporation intended to operate an existing railroad then under foreclosure, to assume the conduct and prosecution of a suit with a third person involving the right to a portion of the property and to abide its result, and indemnify the parties to the agreement against the same, was held, in Vilas *v.* Page, 106 N. Y. 439, not to create a cause of action in favor of such third person after the establishment of his claim. There was no promise to pay him the amount of his claim; nor was the promise to abide the result of the litigation or to indemnify the vendors in the contract, made for his benefit, or within Lawrence *v.* Fox, and kindred cases.

When a party agrees to pay another a sum of money, when the consideration is rent received from a third person, the contract inures to the benefit of the promisee, who can maintain an action thereon for the recovery of what is so agreed to be paid. To bring a case within this principle, there must be an agreement to pay to such party. But in Davis *v.* Morris, 36 N. Y. 569, there was nothing but an agreement between the parties determining what application shall be made of a sum of money belonging to them, and although they agree that the rent in question shall be paid out of this money, no right of action against both or either of the parties accrued to the lessor upon the agreement.

*In mortgaged cases.*—In King *v.* Whitely, 10 Paige, 465, the grantor of an equity of redemption in mortgaged premises, who was neither legally nor equitably interested in the payment of the bond and mortgage except so far as the latter was a charge upon his interest in the lands, conveyed the lands subject to the mortgage, and the conveyance recited that the grantees therein assumed the mortgage, and were to pay off the same as a part of the consideration of such conveyance, and it was held that, as the

grantor in that conveyance was not personally liable to the holder of the mortgage to pay the same, the grantees were not liable to such holder for the deficiency upon a foreclosure and sale of the mortgaged premises.

In this case, the Chancellor distinctly repudiates the idea of any right being acquired by the holder of the mortgage, in case of such an agreement, on the ground that it was a contract made between the grantor and the grantee, for the benefit of the mortgagee, and shows that the principle that if one person makes a promise to another, for the benefit of a third, the latter may maintain an action on the promise, applies only to third persons for whose special benefit the promise was intended, and that the older English cases which support the doctrine rest upon the ground that the person obtaining the promise, and from whom the consideration proceeded, intended it for the benefit of the third person.

The case of Russell *v.* Porter, 87 N. Y. 171, recognizes this ground of liability, and the case of Trotter *v.* Hughes, 12 N. Y. 74, adopts the doctrine of King *v.* Whitely, *supra;* and it was held in the latter case that although the accepting of a deed, containing such a stipulation, from a party personally liable to pay the mortgage, rendered the grantee liable to the mortgagee, yet the assumption of the mortgage, in a deed from a party not liable to pay it, did not make the grantee liable, inasmuch as the only ground of liability was that of equitable subrogation of the creditor to all securities held by the surety of the principal debtor; and the grantor, who was not personally liable for the mortgage debt, did not stand in the situation of surety.

The rule which exempts the grantee of mortgaged premises subject to a mortgage, the payment of which is assumed in consideration of the conveyance as between him and his grantor, from liability to the holder of the mortgage when the grantee is not bound in law or equity for the payment of the mortgage, is found in reason and principle, and is not inconsistent with that class of cases in which it has been held that a promise to one for the benefit of a third party may avail to give an action directly to the latter against the promiser.

It is true there need be no privity between the promiser and the party claiming the benefit of the undertaking, nor is it necessary that the latter should be privy to the consideration of the promise, but it does not follow that a mere volunteer can avail himself of it. A mere stranger cannot intervene, and claim by action the benefit of a contract between other parties. There must be either a new consideration or some prior right or claim against one of the contracting parties, by which he has a legal interest in the performance of the agreement. Vrooman *v.* Turner, *ante.*

When the owner of land who has mortgaged it conveys it to another who assumes the payment of the mortgage for and as part of the purchase money, a twofold relation is constituted: with his grantor, to protect him

from any liability, so that if he is compelled to pay the debt he shall be repaid; and with the mortgagee, that by a species of subrogation, the former may resort to him directly to enforce the payment. The positions of the parties become such that the grantee is the principal debtor, and the grantor a surety.

In Russell *v.* Pistor, 7 N. Y. 173, it is said that it is a general principle that, where the owner of land mortgages it to secure payment of a debt, and afterwards sells the equity of redemption subject to the lien of the mortgage, and the purchaser assumes the payment of the mortgage as a portion of the purchase money, the latter becomes personally liable for payment of the debt to the holder of the mortgage in the first instance, and if the mortgagor is compelled to pay it, he can recover it from the purchaser of the equity of redemption.

A mortgagee in Burr *v.* Beers, 24 N. Y. 178, was permitted to maintain a personal action against a grantee of the mortgaged premises who has assumed to pay the incumbrance, without foreclosing the mortgage, or joining the mortgagor as defendant. The right of recovery in this case was put upon the broad principle that if one person makes a promise to another, for the benefit of a third person, the latter may maintain an action on the promise.

It is said in Garnsey *v.* Rogers, *ante*, that it is not every promise made by one person to another, from the performance of which a third person would derive a benefit, that gives a right of action to such third person, who is privy neither to the contract nor the consideration. To entitle him to an action, the contract must have been made for his benefit. He must be the party intended to be benefited.

So, also, in Turk *v.* Ridge, *ante*, and in Merrill *v.* Green, 55 Id. 270, third parties, under similar agreements, sought to maintain an action upon engagements by the performance of which they would be benefited, but to which they were not parties, and failed.

In Cumberland *v.* Codrington, *ante*, Chancellor Kent intimated that a special agreement between the purchaser and seller of an equity of redemption by which the amount of the mortgage debt is considered as so much money left in the hands of the purchaser for the use of the mortgagee, would be sufficient ground for a suit at law by the mortgagee.

An agreement to assume the payment of an existing mortgage when contained, not in an absolute conveyance, but in a mortgage, or in a conveyance which, in equity, amounts only to a mortgage, does not impose upon the second mortgagee making such an agreement, an absolute continuing personal liability, which can be enforced by the first against the second mortgagee. An agreement of this character is a mere contract to advance, and not a security in the hands of the grantor as surety, available to the parties in whose favor the prior liens exist, on the ground of equitable subrogation. Garnsey *v.* Rogers, *ante*.

In this case, it was held that a judgment could not be sustained on the

21

principles which prevailed prior to the case of Burr *v.* Beers, *ante*, nor on the doctrine of that case.

In Burr *v.* Beers, *ante*, the amount due upon the mortgage was reserved out of the purchase money and left in the hands of the purchaser, upon his agreement with the vendor to apply it to the payment of the mortgage debt. The purchase money was in fact a fund in the hands of the purchaser which he had agreed to apply to the use of the mortgage creditor. In performing this agreement, he would have done nothing more than to pay his own debt in the manner in which he had agreed to pay it.

But in the case of Garnsey *v.* Rogers, *ante*, the agreement was not to apply money which the promisee delivered for the purpose, or which was due him from the promisor, to the use of a third party, but the promisor engaged to advance his own money for the purpose of protecting the property of the promisee, which advance when made would become a lien on the property of the promisee, and was made for the benefit of the promisee only.

Where one receives a conveyance of land to himself from a mortgagor, in which conveyance there is a stipulation, that he, as party of the second part, will pay off and discharge the mortgage, as a part of the consideration of the premises, he was held, in Ricard *v.* Sanderson. *ante*, personally liable to the holder of the mortgage for the amount due thereon, although the deed was not signed or subscribed at all by him, and was taken merely as security for an indebtedness owing to him by the firm of which the mortgagor was a member.

In Miller *v.* Winchell, 70 N. Y. 437, the owner of certain premises executed a mortgage thereon to defendant, who agreed, by parol, to pay two former mortgages on the premises, and, after deducting the amount thereof, pay to the mortgagor the balance secured by his mortgage. The mortgagor subsequently sold and conveyed the premises to plaintiff, with covenant of warranty, subject to defendant's mortgage. In an action to compel defendant to pay and cancel of record prior mortgages, or to have the amount thereof indorsed upon his mortgage, it was held that plaintiff was not entitled to recover upon the theory that defendant's promise was made for his benefit, as at the time it was made, he had no relation to or interest in the land. The holder of the prior mortgages could have maintained an action to enforce the defendant's promise, within Lawrence *v.* Fox, *ante*, and Burr *v.* Beers, *ante*.

In Campbell *v.* Smith, 71 N. Y. 26, the owner of certain premises upon which was a mortgage executed by said owner and held by plaintiff, executed and delivered a deed thereof, which recited the deduction of the amount of the mortgage from the purchase price, and contained a covenant on the part of the grantee to pay the same. The name of the grantee was left in blank with authority to the holder of the deed to insert the name of any person. The holder, being indebted to a firm of which defendant was a member, agreed with the latter to insert his name in the deed, and that any profits which might be made should be applied on the firm debt;

Note on Promise by One to Another for the Benefit of a Third Person.

and defendant subsequently conveyed the premises. In an action brought upon the covenant in the deed to recover a deficiency arising on foreclosure, it was held that defendant, by consenting to the insertion of his name as grantee and accepting the deed, occupied the position of purchaser, with all the rights and obligations incident to that position as between him and the grantor, and that plaintiff was entitled to enforce the covenant against him; that the defendant's arrangement with the holder of the deed did not impair the right of the mortgagee or his assignee, but that it was collateral to the deed, and only affected the parties to it.

Independently of Lawrence *v.* Fox, the covenant of a grantee in an absolute deed, who, as part of the consideration, assumes and agrees to pay incumbrances on the land for the payment of which the grantor is personally bound, may be enforced by the creditor in an equitable action upon the doctrine of equitable subrogation. Pardee *v.* Treat, 82 N. Y. 385; Halsey *v.* Reed, 9 Paige, 446; Kirk *v.* Whitely, *ante;* Garnsey *v.* Rogers, *ante.*

But it is not in every case that a covenant to pay incumbrances contained in a deed of land is available to, or can be enforced by, the creditor, in either an equitable or legal action.

An assumption clause in a deed can only be enforced by a lienor, where in equity the debt of a grantor secured by the lien becomes, by the agreement between him and his grantee, who assumes the payment, the debt of the latter. On the other hand, if the assumption is in aid of the grantor, upon the security of the land, and not as between them, a substitution of the liability of the grantee for that of the grantor, or in other words, if, in equity as at law, the grantor remains the principal debtor, then the assumption clause is a contract between the parties to the deed alone, and the liability of the grantee, for any breach of his obligation, is to the grantor only. Where the grantee is in equity bound to pay the debt as his own, then the covenant, according to the case of Burr *v.* Beers, may be treated as a promise made for the benefit of the lienor, and may be enforced in a legal action, although, even in that case, it would seem that the primary object of the covenant is to protect the grantor against his personal liability for the debt secured upon the land. Pardee *v.* Treat, *ante.*

In this case, a deed, absolute on its face, was executed to defendant, containing a covenant upon the part of the latter to pay certain liens, but was intended simply as security for a debt of the grantor to the defendants, and in accordance with the agreement of the parties, and as part of the same transaction, defendants executed a contract agreeing to convey to the grantor's wife, on the payment by her of the amount of the liens and defendant's debt, which amount she agreed to pay at a specified time. And it was held that an action by a lienor to recover of defendants the amount of his lien was not maintainable; and that the fact that the deed vested the legal title to the land in the defendants was not decisive on the question

but that the conveyance was an equitable mortgage, although the defeasance was to some other than the grantor.

In Hand *v.* Kennedy, 83 N. Y. 149, plaintiff sold to defendant certain premises, taking a mortgage thereon to secure a portion of the purchase money, and subsequently the grantee conveyed to two parties undivided interests in said premises. The latter deed recited that the parties thereto were jointly interested in the purchase from plaintiff, though the title had, for convenience, been taken in the name of the first grantee for the use and benefit of all in certain specified proportions, and that the grantees had assumed and agreed to pay their proportions of said mortgage. This conveyance was made subject to the mortgage, and the proportions thereof, which the grantees assumed and agreed to pay as part of the consideration, were specified. In an action to recover a deficiency arising on the fore-closure of the mortgage, it was held that there was a sufficient considera-tion to sustain the covenant of the grantees, and that plaintiff, as mort-gagee, could enforce the same. The right to maintain the action rests upon the principle laid down in Lawrence *v.* Fox, and kindred cases.

A covenant in a deed, absolute on its face, but intended simply as a mortgage, by which the grantee assumes and agrees to pay a prior mort-gage, was held, in Root *v.* Wright, 84 N. Y. 72, to be in effect simply an agreement between the parties that the grantee will advance the amount of the prior lien upon security of the land, and gives no right of action against the grantee to the holder of the mortgage, as he is neither party to the contract, nor the one for whose benefit it was made.

There is no authority to support the proposition that a person not a party to the promise, but for whose benefit the promise is made, can main-tain an action to enforce the promise, where it is void as between the prom-iser and promisee, for fraud, or want of consideration, or failure of consideration. Dunning *v.* Leavitt, 85 N. Y. 30. ᵒ

In this case a grantee holding under a warrantee deed, who, by a cov-enant in his deed, had assumed and agreed to pay a mortgage on the premises, was evicted by a paramount title, and it was held that the holder of the mortgage could not enforce the covenant, since the substantial con-sideration therefor is the conveyance of a title, and, upon eviction, the consideration wholly failed. The mortgagee, who seeks to avail himself of such a covenant, claims under and through the grantor, and his claim is subject to defenses arising out of a transaction between the original parties, when the deed was executed.

The question as to the effect of a mortgage assumption clause on the part of a grantee in a conveyance by deed-poll, signed by the grantor only, was considered in Atlantic Dock Co. *v.* Leavitt, 54 N. Y. 35, and the court by Earl, Commissioner, expressed the opinion that a grantee in such a deed becomes bound, upon acceptance, as covenantor to pay the mortgage. Though the decision of this point may not have been essential to support the judgment in this case, the question was carefully considered by the

court, and many authorities tending to sustain the conclusion reached, were cited, as well as numerous expressions of judges in the courts of this state, recognizing the doctrine maintained in the opinion.  Bowen v. Beck, 94 N. Y. 86.

In this case, it was held that, where a conveyance of real estate, purporting to be an indenture and containing a clause by which the grantee assumes and agrees to pay a mortgage upon the lands conveyed, has been accepted by the grantee, it will, for the purpose of a remedy against the grantee, be considered as the deed of both parties, and the clause as a covenant.

An agreement of a purchaser of real estate to pay the holder of a mortgage, as a part of the consideration, the amount thereof where it had been intended and was in effect an assignment of an original mortgage on the mortgaged premises, was held, in Rush v. Dilks, 43 Hun, 282, to be supported by a good and valuable consideration, and enforceable for the benefit of the holder of such later mortgage.

In Met. Trust Co. v. N. Y., L. E. & W. R. R. Co., 45 Hun, 84, on an agreement between two railroad companies as to the management of the companies and the interchange of their business, the Erie Company agreed to use its influence and exercise its control to promote the interests and the business of the Tonawanda Company, and to make good any deficiencies, in the net earnings of the latter company, to meet the interest upon its bonded indebtedness from time to time as the same became due and payable, and for any and all advances so made by it, with interest thereon, as well as for any and all advances so made to the latter by the former company with interest thereon ; and the Erie Company was given a first lien upon the railroad, franchises and property of the Tonawanda Company, next after its bonded indebtedness, and a first charge upon its surplus earnings next after the payment of the accruing interest upon its said bonded indebtedness.   The Tonawanda Company made default in the payment of the interest due on its bonds, and the Erie Company failed to make good the deficiencies.   In an action brought by a trustee to foreclose a mortgage given to secure said bonded indebtedness and interest and for any deficiency that might arise on the sale, it was held that the plaintiff was not entitled, in such action, to a judgment for deficiency against the Erie Company, upon the ground that he was not, under the said agreement, entitled to enforce the promise of the Erie Company therein contained, as it was not made for the benefit of the bondholders, but only for the benefit of the company itself.

There has been some diversity of opinion as to the ground upon which the liability of the grantee in a deed, who has assumed a mortgage, must rest, and it has finally been settled that it may rest upon the doctrine, that where one person makes a promise to another for the benefit of a third person, the latter may maintain an action upon it.   Thorp v. The Keokuk Coal Co., 48 N. Y. 253 ; Burr v. Beers, ante.   In such case it is not needful

that there should be any consideration passing from the third person. It is sufficient if the promise is made by the promisor upon a sufficient consideration passing between him and his immediate promisee, and when the third person adopts the act of the promisee in *obtaining a promise for his* benefit, he is brought into privity with the promiser, and he may enforce the promise as though it was made directly to him. Lawrence *v.* Fox, *ante ;* Thorp *v.* The Keokuk Coal Co., *ante.*

In the latter case the defendant accepted a deed of certain premises containing a clause that it was made subject to a mortgage which the grantee thereby assumed and promised to pay. In an action by the mortgagee upon the assumption clause in the deed, it was held that he could maintain an action upon the implied covenant in said deed, without first foreclosing the mortgage, though the bond accompanying the mortgage contained a condition that, in case of default, recourse must first be had to the lands mortgaged, and that the obligor would only be answerable for the deficiency.

In Schley *v.* Fryer, 100 N. Y. 71, the action was based upon a clause in a deed to the defendant which reads as follows : " This conveyance is made subject to two certain mortgages for $4,000 each, and which said party of the second part assumes with interest from the 22d day of August, 1871." The defendant claimed that the word " assumes " was not broad enough to impose a personal liability upon him to pay the mortgage in question, but the court held that the word must have the same meaning which it would have if the words " to pay " followed it.

The defendant *also claimed that, as he assumed the mortgage merely* which contains no covenant to pay, he did not become liable to pay the bond, and therefore incurred no personal liability ; but the court declared that it was the clear intention of the parties that the grantee should assume the payment of the mortgage debt, and not merely take the real estate subject to the mortgage, and held that, in cases of this kind where the grantee has been made personally liable by an assumption of a mortgage upon the granted premises, the liability has generally been imposed by an agreement or covenant to assume or pay the mortgage with no special reference to, or designation of, the mortgage debt, or the bond to which the mortgage was collateral.

It was also held in this case that, where it appears that the grantee in such a deed has given to another, by whom the purchase of the land was made, general authority to deal in real estate in his name, he was bound by the covenant, although he permitted the ostensible agent to reap the benefits of his dealing, and did not know that the clause was in the deed, and never specially authorized its insertion.

*In partnership transfers.*—In Hall *v.* Robbins, 4 Lans. 463, the defendant, in consideration of goods sold and delivered to him by a certain firm, agreed with them to pay the plaintiff's firm the amount of a debt due from the former firm to them. Plaintiff's firm subsequently assigned their claim to

Note on Promise by One to Another for the Benefit of a Third Person.

plaintiff. In an action on said agreement by plaintiff against defendant, it was held that a promise made upon a valid consideration to pay a third person, will sustain an action by the third person in his own name against the promiser.

Where, upon the dissolution of a firm, a new firm is formed, which assumes all the debts of its predecessor and takes all its assets, such new firm was held, in Carman v. Kelly, 5 Hun, 283, to become primarily liable for such debts to the creditors of the old firm, although the original debtors have neither been released nor discharged therefrom ; following the doctrine of Lawrence v. Fox, *ante ;* Hartley v. Harrison, 24 N. Y. 170 ; Dingledein v. Third Ave. R. R. Co., 37 Id. 375 ; Hutchings v. Miner, 46 Id. 456.

In Melvain v. Tomes, 14 Hun, 31, a firm, composed of the defendant and the plaintiff, borrowed of the plaintiff as executor and trustee of an estate a sum of money. The firm was subsequently dissolved, and defendant, in pursuance of an agreement, took all the assets, and agreed to pay all the debts including that due to the said estate. In an action against defendant by the plaintiff, as such executor and trustee, to recover the same, it was held that the promise of the defendant inured to the benefit of the estate, and that it could be enforced by the plaintiff.

In Dingeldein v. The Third Ave. R. R. Co., 37 N. Y. 575, the property of a partnership consisting of a railroad franchise, a road partly built, cars, horses, sleighs, harness, leases and licenses, was transferred to a corporation, subject to the payment by the said corporation of all the money which the partnership was bound to pay on account of sewers, specifying the claim in question, and it was held, in an action on said claim, that the creditor of the firm could maintain an action against the corporation, and was entitled to recover from it the amount due to him from the partnership.

A party who agreed with a partner in a firm, in consideration of the latter's transfer of his interest, to assume the payment of the firm debts, was held in Berry v. Brown, 22 W. Dig. 103, liable to a firm creditor, though the written agreement subsequently entered into between the parties was in the name of the promisor's wife, where it was the design and intention of the parties that the contract should be with him.

In Allendorph v. Wheeler, 23 W. Dig. 319, a firm was dissolved by the retirement of one of its members, and a new firm was formed with new members which took the assets of the old firm, and, in consideration thereof, assumed and agreed to pay its debts, and a creditor of the old firm was permitted to maintain an action against the new firm to collect his claim.

In Edick v. Green, *ante,* a partnership was dissolved by the sale by one partner of his interest in the firm, subject to the firm debts, to a third party. By the written agreement then made the partner agreed that the purchaser's interest should be an equal undivided one half, and covenanted that the collectible accounts were sufficient to pay all the debts due from the firm, and that if they could not, after efforts to collect them, be collected, he would make good the deficiencies. In consideration of this covenant, the

purchaser agreed to pay one half of the debts of the said firm and to take the retiring partner's place in the firm as an equal partner. In an action, brought by a creditor of the former firm against the members of that firm and the purchaser, it was held that the agreement between the selling partner and the purchaser imposed no liability upon the latter to pay the firm debts, which could be enforced by creditors holding such claims; that such an agreement is not a promise made for the benefit of the creditors, although they might be benefited by its performance. See also Pardee *v.* Treat, *ante.*

In Merrill *v.* Green, *ante,* one partner, upon the dissolution of a firm, executed to another a bond with a surety, conditioned for the payment by the partner executing it of all the firm debts, and it was held, that the liability of the obligors was to the obligee only, not to the creditors, and that an action could not be maintained thereon by a firm creditor to recover his indebtedness of the obligors.

In Claflin *v.* Ostrom, 54 N. Y. 581, a partner sold out his interest in the firm property to his copartner, who agreed to pay the firm debts, among which was a debt due plaintiffs, and defendant guaranteed the performance of this agreement. Plaintiffs' debt was not paid, and the selling partner assigned to them his interest and claim under the agreement and the guarantee. In an action to recover the amount due plaintiffs, it was held that they were entitled to recover, either directly on the guarantee, which they could adopt and enforce in their own name, or upon the assignment.

Where one engaged in business enters into a copartnership with another for the purpose of continuing the business, and transfers his assets to the firm in consideration of an agreement of the firm to assume and pay certain specified debts incurred in the business, and to apply the assets first to the payment of said debts, the agreement was held in Arnold *v.* Nichols, 64 N. Y. 117, to be made for the benefit of the creditors holding the claim specified, and an action could be maintained by such a creditor against the firm upon such agreement. The assets to which the transferrer's creditors had the right to look for the payment of their claim were conveyed to the firm, and hence the promise of the firm to pay such claims must be deemed to have been made for their benefit. It was not made to exonerate the transferrer from the payment of his debts, and not primarily nor directly for his benefit, since his property was to be taken to pay the debts, and he was still to remain liable as one of the principals to pay them. The case is, in this respect, unlike the case of Merrill *v.* Green, *ante ;* and the action is maintainable upon the principles laid down in the case of Lawrence *v.* Fox, *ante,* and recognized in Burr *v.* Beers, *ante.* Thorp *v.* Keokuk Coal Co., *ante,* and Claflin *v.* Ostrom, *ante.* The creditor had the right to adopt the promise made expressly for his benefit.

It was held in Wheat *v.* Rice, *ante,* that a creditor of a firm cannot maintain an action upon an agreement made with the firm, by one not a member, to pay a portion of its indebtedness, on the ground that no one

Note on Promise by One to Another for the Benefit of a Third Person.

creditor can show from the contract that it was intended for his benefit, or covers any part of his debt.

It would be a very great extension of the doctrine of Lawrence *v.* Fox, *ante,* to give a right of action to a creditor for whose benefit the promise might, or might not, have been made. In Barlow *v.* Myers, 64 N. Y. 41, where the promise was to pay generally, the debts of the firm, without specification of the particular debts, or naming the creditors of the firm, attention was called to the fact that in this respect the case was different from all the cases in which the right of action had been sustained in behalf of the third party. But there it was possible to say that the creditors were sufficiently identified as belonging to a class all of whom were to be paid; but where no class is named or described, who were to be paid by the promiser, or the extent is left absolutely uncertain and undetermined, the doctrine of Lawrence *v.* Fox, should be restricted within the precise limits of its original application.

An agreement by a third person with an outgoing member of a firm to relieve him from, and indemnify him against, the firm debts, where no consideration passed to the promiser, was intimated in Berry *v.* Brown, 107 N. Y. 659, not to be enforceable against him by a creditor of the firm. It was regarded as an agreement for the benefit of the outgoing member to relieve him from, and indemnify him against liability, with no intention to secure any benefit to the firm creditors; and, as the sale was not made to the third person, and no consideration whatever passed to him, the creditors, who are strangers to the agreement, cannot enforce it against him. See also Merrill *v.* Green, *ante;* Simson *v.* Brown, *ante.*

*Moral obligation.*—In Bull *v.* Bull, 31 Hun, 69, the testator determined to change his will previously made by adding a codicil, so as to give a certain sum to be divided among six nephews, of whom plaintiff was one. He stated his intention to the executor of the existing will, who told him that he need not make a codicil, but that he would pay to each of the nephews the respective amount. The testator died without making such codicil; and, while the executor was willing and ready to pay the amount to the nephews, the residuary legatees refused to consent, and no payment was made. The executor died, and the plaintiff, to whom the other nephews had assigned their claims, brought an action against the executor's estate upon his promise to the testator, and it was held that he could not recover, on the ground that, even though it was a personal promise on the part of the executor, he was not a legatee or devisee, and did not divert, by his promise, to his own benefit, anything from the plaintiff and his assignors, nor practice any fraud upon them. In all cases bearing upon this subject, the promise, which has been enforced, has been made by a person who, by descent, devise or bequest, has received from the decedent, property out of which the proposed devise or legacy would have come, but which was prevented by the promise of the person thus held liable. Id.; Crippen *v.* Crippen, 53 Hun, 232, and reported above.

Note on Promise by One to Another for the Benefit of a Third Person.

In this case it was held that, in order to recover upon a promise to pay money, made by a person who, by descent, devise or bequest, as, it is claimed, received from a decedent property, out of which the decedent wished that the amount so promised should be paid, it must affirmatively appear that such person has received property from the decedent; and mere proof that the promise to pay has been made by him is not sufficient to justify a recovery.

In Todd *v.* Weber, *ante*, plaintiff, an illegitimate child of whom defendant's testator was the putative father, which relationship he acknowledged, was supported, cared for and educated by relatives of her mother from the time of her birth until the death of said testator, at his request and on the strength of his repeated representations and promises that they would be paid ; and that in case she survived him, he would provide for her by his will sufficient to pay for such maintenance and care. Plaintiff, after she became of age, having been informed of these promises, and in reliance upon them, promised to pay the expenditures so incurred for her benefit. No such provision was made in the will. And it was held that the facts established an agreement binding in law upon the testator, and enforceable against his estate. An action therefor was maintainable and properly brought in plaintiff's name.

In the Matter of Will of O'Hara, 95 N. Y. 403, it was held that, where a person, even by silent acquiescence, encourages a testator to make a devise or bequest to him, with a declared expectation that he will apply it for the benefit of others, it has the force and effect of an express promise so to apply it, and if he does not intend so to do, the silent acquiescence is a fraud; and that, where the gift is to several as joint tenants, and the promise to carry out the declared purpose of the testator is made by one of them, it is obligatory upon all.

In Knowles *v.* Erwin, 43 Hun, 150, a father executed a deed to his son for a nominal consideration and took a written agreement to pay his daughter a specified sum of money at a specified future time. The grantor delivered the paper to his son-in-law to be kept safely, who subsequently delivered it to the daughter. In an action by the said daughter against the son to recover, on said written agreement, the stipulated amount, it was held that the relationship existing between the parties was a sufficient present consideration to sustain the promise and that the plaintiff could recover in a direct action.

The relation of creditor and debtor did not, but that of parent and child did exist, and it was the purpose of the father, by the papers executed, to to make a distribution of the estate between his children. Where such relationship exists, it has always been held to present a sufficient consideration to support the promise. Id. Since the consideration was such as is recognized by the courts, the case presented the simple question of a promise from one person to another to pay a debt to a third person.

The right of a third person to recover of the promiser for such debt, is

Note on Promise by One to Another for the Benefit of a Third Person.

unquestioned. Id; Schermerhorn *v.* Vanderhyden, *ante*; King *v.* Whiteley, *ante ;* Lawrence *v.* Fox, *ante ;* Burr *v.* Beers, *ante ;* Rogers Locomotive and Machine Works *v.* Kelley, 88 N. Y. 234.

In Gates *v.* Hames, 55 Hun, 602, the mother of the defendant who was the grandmother of the plaintiff held a mortgage on real estate belonging to the defendant. She discharged the mortgage in consideration of an agreement of the defendant to pay the amount due thereon by boarding her, if she chose to live with her, and, if she did not choose to do so, to pay the amount, after her death, to five persons including the plaintiff. She did not afterwards live with the defendant, and, after her death, the plaintiff brought an action against the defendant on said promise. And it was held that the promise was one which cannot be enforced by the third persons for whose benefit it was made. To give a third party, who may derive a benefit from the performance of the promise, an action, there must be a legal right, founded upon some obligation of the promisee, in a third party, to adopt and claim the promise as made for his benefit. But in this case there was no such legal or moral obligation, debt or duty owing by the promisee to the plaintiffs. The benefit which the former sought by the contract to provide for the latter was a mere gratuity, the motive of which seems to have been love and affection, a sufficient consideration to support a deed or an executed contract, but which cannot render obligatory a mere promise or executory agreement. In the case of Todd *v.* Weber, *ante*, the court *held* that the natural obligation arising out of the relation of the putative father to his child will uphold a contract upon which an action may be sustained; and thus the case was brought directly within the rules stated in Vrooman *v.* Turner, *ante*, which requires a legal or moral obligation owing to the party to be benefited by the promise, to support an action by him on a promise made to another.

But in Gates *v.* Hames, *ante*, the grandmother was under no obligation to contribute to the support of the plaintiff, or to give her any portion of her estate, and there was no debt or duty owing from her to plaintiff. The promise of the defendant, therefore, was one which could not, under the cases, be enforced by the plaintiff.

*When irrevocable.* In Ranney *v.* McMullen, 5 Abb. N. C. 246, the mortgagor, after a conveyance of the mortgaged premises by him to one who assumed the payment of the mortgage, released the grantee from his covenant to pay the mortgage. And it was held that, in such a case, this did not release the grantee from his liability to the mortgagee. The release of the mortgagor by the creditor was held, in Bentley *v.* Vanderheyden, 35 N. Y. 677, not to operate as a discharge of his grantee, who has assumed the mortgage; and no ground or principle can be perceived upon which the mortgagor can do more than discharge the liability of the purchaser to himself.

The right of the third party benefited by the promise, at least before he has accepted and adopted it, is of such derivative and imperfect character

if, indeed, it attaches at all, and is so subject to the relations and equities of the original promisor and promisee, that the destruction of the consideration of the promise in the one case, and the rescission and annulment of the contract in the other, in actions to which the alleged beneficiary is no a party and in which he has not been heard, bars and prevents him from any right of action upon the promise. An acceptance or adoption of the promise by word or act, on the part of the third person is essential; Wheat *v.* Rice, *ante;* Dunning *v.* Leavitt, *ante;* Crowe *v.* Lewin, 95 Id. 423; Turk *v.* Ridge, *ante;* Garnsey *v.* Rogers. *ante;* Brumen *v.* Turner, 69 Id. 285; Knickerbocker Life Ins. Co. *v.* Nelson, 78 Id. 151.

In Frank *v.* The N. Y., etc., R. R. Co., 44 Hun, 624, it was *held* that the legal right of a party to assert that the performance of a contract made between two others for his benefit cannot be revoked or modified without his consent, rests in the fact of an expressed promise on the part of the person whom he seeks to charge, and thus arises a privity of contract Such is the doctrine of Lawrence *v.* Fox, and kindred cases.

In Ward *v.* Cowdrey, 51 Hun, 641, it was held that a promise to pay a third person a debt due him by the promisee may be enforced by the latter against the promisor's estate, in the absence of evidence that the third person knew of and acquiesced in the promise. He could bring an action, and leave the promisor's estate to prove such facts as deprived him of the right to enforce his claim.

In Gifford *v.* Corrigan, 117 N. Y. 257, one McEvoy, a parish priest owning certain premises on which there was a mortgage, executed and recorded a deed thereof to Cardinal McCloskey, in which the payment of the mortgage was assumed by the latter. After an action of foreclosure of said mortgage was begun, McEvoy's executor formally released the Cardinal from his covenant, reciting that it was inserted by mistake, etc. It was held that the release was wholly ineffectual; that such a contract was not revocable after it came to the knowledge of the mortgagee, and he has assented to it and adopted it as a security for his benefit. By his assent and adoption the mortgagee brings himself in privity with the contract, elects to avail himself of it, and must be assumed to have governed his conduct accordingly. The right of action against the grantee must have arisen at once upon the delivery of the deed, or at the latest when the promise came to the knowledge of the mortgagee and upon his assent to and adoption of it. While no right of the mortgagee is invaded by a change of the contract before it is brought to his knowledge and he has assented to and acted upon it, yet to permit a change thereafter, while the creditor is relying upon it, would be grossly inequitable and practically destroy the right which has maintained itself after so long a struggle.

In Knickerbocker Life Ins. Co. *v.* Nelson, *ante*, the owner conveyed real estate covered by four mortgages to another, subject to said mortgages, which the deed recited were part of the purchase price of the premises.

Note on Promise by One to Another for the Benefit of a Third Person.

The grantee conveyed the premises to a third party, subject to the same mortgages, and the latter reconveyed to the first grantor; the latter conveyance was not made subject to the mortgages. It was held that, as the mortgagee had no knowledge of the assumption of the mortgages, did not assent to it and was not the party intended to be benefited, it was in the power of the granter and mortgagor to so change the relation that the obligation on the part of his grantee should be cancelled, and the dedication of the land to the payment of the mortgages revoked. See also Simson *v.* Brown, *ante;* Merrill *v.* Green, *ante;* Kelly *v.* Roberts, *ante;* Thorp *v.* Keokuk Coal Co., *ante*